**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

## 05 — 10419 DPW

GENX INTERNATIONAL, INC. and
IVFONLINE.COM, LLC,

**Plaintiffs,**

v.

JEREMY JOHNSON and
REPROMEDIX CORP.,

**Defendants.**

: CIVIL ACTION NO.

:
:
:
:
:

MAGISTRATE JUDGE _____

:
:
:
: **MARCH 3, 2005**

RECEIPT # _____
AMOUNT $250
SUMMONS ISSUED (2)
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK _____
DATE 3/1/05

### COMPLAINT WITH JURY DEMAND

1.    This is a civil action by Plaintiffs, genX international, inc. and IVFonline.com, LLC (collectively referred to as "genX"), as employer, against Defendant Jeremy Johnson ("Johnson"), genX's former employee, and Repromedix Corp. ("Repromedix"), Johnson's current or future employer.

### INTRODUCTION

2.    genX files this civil action seeking legal and equitable relief for Johnson's breach of a confidentiality and non-competition agreement; breach of the duty of loyalty; tortious interference with business relations; willful and malicious misappropriation of trade secrets; computer related offenses; and unfair methods of competition or deceptive acts or practices in the conduct of trade or commerce, for Defendant Repromedix' tortious interference with contractual relations; tortious interference with business relations; willful and malicious misappropriation of trade secrets; unfair methods of competition or deceptive acts or practices in the conduct of trade or commerce, and aiding and abetting, and for both Defendants' conspiracy to engage in the foregoing acts.

## THE PARTIES

3.    Plaintiff genX international, inc. is a Connecticut corporation with its principal place of business in Connecticut.  genX is in the business of developing and manufacturing new and advanced laboratory technologies and products for infertility, assisted reproduction, cell biology and other medical applications.

4.    Plaintiff IVFonline, LLC is a Connecticut corporation with its principal place of business in Connecticut.  IVFonline.com is in the business of marketing and selling products for infertility, assisted reproduction, cell biology and other medical applications.

5.    Upon information and belief, Defendant Johnson is a Canadian resident who currently resides in Boston, Massachusetts.

6.    Upon information and belief, Defendant Repromedix is a Delaware Corporation with its principal place of business in Woburn, Massachusetts.  Repromedix is in the business of designing laboratory reproductive testing and finding solutions to infertility problems.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. § 1332.  The matter in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8.    Venue lies in this district pursuant to 28 U.S.C. § 1391, because a majority of the acts and/or omissions alleged herein occurred in this district.

## CHOICE OF LAW

9.    The cause of action for breach of the confidentiality and non-competition agreement arises under Connecticut law, as provided for in the agreement.    The remaining claims arise under Connecticut law, as Connecticut is the place in which genX has incurred injury, and Connecticut has the most significant relationship to the controversy.

## THE FACTS

10.    genX and Repromedix conduct similar businesses, manufacture and sell competing products and vie for similar clients, customers and market shares in the human assisted reproduction and infertility industry.

11.    Over the years, genX has spent substantial amounts of time and money in compiling, developing and acquiring certain confidential information and trade secrets including, but not limited to patents, trademarks, formulas, research and product development compilations, processes, product lists, customer lists, and compilations of customer purchasing habits.  genX's compilation of such information and trade secrets is not readily available to its competitors and has given it a competitive advantage in the human assisted reproduction and infertility industry.

12.    genX has kept this information confidential and only makes it available to certain key individuals involved in marketing and developing its business.  The time, expense and effort which have gone into the development of genX's confidential information and trade secrets is such that the independent development of identical or comparable materials by its competitors would be extremely expensive and time-consuming.

13.    In order to ensure that genX's proprietary information and trade secrets remain confidential, all genX employees are required to sign a Confidentiality Non-Compete Agreement.    Additionally, upon termination of employment, all genX employees are reminded of their ongoing commitments and obligations under the Confidentiality Non-Compete Agreement and are requested to acknowledge such obligations in writing.

14.    On or about October 19, 2001, genX hired Johnson to fill the position of sales representative. In consideration of his continued employment with genX, Johnson executed the Confidentiality Non-Compete Agreement ("Agreement") in favor of genX on or about November 15, 2001. A copy of the Agreement is attached as Exhibit A.

15.    In accordance with the Agreement, Johnson covenanted and agreed that during his employment by genX and for a period of two (2) years after Johnson ceased to be employed by genX, he shall not within Canada, United States or countries directly or indirectly, either for his own account or as a partner, shareholder (other than shares regularly traded in a recognized market), officer, employee, agent or otherwise, be employed by, connected with, participate in, consult or otherwise associate with any other business, enterprise or venture that is the same as, similar to or competitive with genX.

16.    The Agreement provided by way of example, and not as a limitation, that the foregoing shall preclude Johnson from soliciting business or sales from, or attempting to convert to other sellers or providers of the same or similar products or services as provided by genX, any customer, client or account of genX with which Johnson has had any contact during the term of his employment.

4

17.    In accordance with the Agreement, Johnson further covenanted and agreed that during employment, and thereafter two (2) years, he shall not disclose to anyone any Confidential Information. For purposes of the Agreement, "Confidential Information" shall include any of genX's confidential, proprietary or trade secret information that was disclosed to Johnson or that he otherwise learns in the course of his employment with genX, such as, but not limited to business plans, customer lists, financial statements, software diagrams, flow charts and product plans.

18.    Under the Agreement, Johnson agreed that the restrictions set forth therein (including, but not limited to, the time period of restriction and the geographical areas of restriction) are fair and reasonable, and reasonably required for the protection of the interests of genX, its officers, directors, shareholders and other employees.

19.    During his employment with genX, Johnson had access and became privy to genX's confidential, proprietary and trade secret information, including but not limited to patents, trademarks, formulas, research and product development compilations, processes, product lists, customer lists, and compilations of customer purchasing habits.

20.    In or about October 2004, Johnson, in his capacity as genX employee, attended the 2004 American Society for Reproductive Medicine ("ASRM") Conference in Philadelphia, Pennsylvania.

21.    Upon information and belief, a Repromedix representative approached Johnson at the 2004 ASRM Conference for the purpose of improperly luring him to join Repromedix and to gain access to his experience and knowledge of genX's products,

laboratory tests, techniques, trade secrets, customer lists, compilations of customer purchasing habits and other confidential and proprietary information belonging to genX.

22.    Upon information and belief, following the 2004 ASRM Conference, Johnson and Repromedix communicated with one another throughout the period dating from October 2004 through January 2005. genX's records indicate that cell phone charges for which Johnson requested reimbursement for the month of November 2004 included calls placed to Repromedix.

23.    genX's records for the month of November 2004 reveal that cell phone calls to genX clients and customers were placed during a vacation period Johnson took in November 2004. Upon information and belief, Johnson used the aforesaid vacation period to travel to Massachusetts and interview for a position with Repromedix.

24.    genX's records further indicate that faxes were sent from a genX fax machine to a Repromedix fax number in or about December 2004.

25.    On or about January 10, 2005 at or around 11:45 p.m., Johnson, in violation of established company policy, used his company issued employee identification number to gain access to the genX facility at which he was employed. During his employment with genX, Johnson was never known to have worked during late night hours.

26.    The building's security system indicated that Johnson exited the facility at or around 12:00 midnight.

27.    On or about January 14, 2005, Johnson sought a digital copy of a genX sales report from a genX employee from whom he had never sought such information in the past.

6

28.    Johnson normally would obtain such information from Monica Mezezi ("Mezezi"), IVFonline, LLC's President, and led the genX employee to believe that Mezezi was too busy to supply him the information. The digital copy of the sales report Johnson obtained remains unaccounted for.

29.    On January 24, 2005, Johnson tendered a resignation letter dated January 24, 2005, effective the following day. The resignation letter stated that Johnson had accepted a position with a competitor company.

30.    Upon learning of Johnson's intention to join a competitor company, genX sought written assurance from Johnson that he was not in possession of any of its confidential, proprietary or trade secret information. These requests were made to protect genX's legitimate business interests.

31.    Despite genX's requests, Johnson refused to acknowledge that he was not in possession of genX's confidential, proprietary or trade secret information, including but not limited to the digital sales report.

32.    Upon learning of Johnson's intention to join a competitor company, genX sought written assurance from Johnson that he would abide by the terms of the Agreement. The request was made to protect genX's legitimate business interests.

33.    Despite genX's request, Johnson refused to acknowledge that he would abide by the terms of the Agreement.

34.    genX accepted Johnson's resignation on or about January 25, 2005.

35.    Immediately after Johnson left genX, Johnson's genX email address suddenly stopped receiving email. Normally, a former genX employee's genX email

address will receive emails from various sources years after the employee has left genX.

36.    Upon learning of Johnson's intentions to join Repromedix, Michael Cecchi, ("Cecchi") genX's President, placed an informal phone call with Craig S. Sockol, Repromedix's President, and advised Mr. Sockol that Johnson had executed the Agreement in favor of genX, and that the Agreement imposed specific commitments and obligations on Johnson.

37.    During the phone conversation, Mr. Sockol refused to provide assurance to Cecchi that Repromedix would not proceed with Johnson's hiring.

38.    By letter dated January 27, 2005, genX further advised Mr. Sockol of Johnson's having executed the Agreement in favor of genX, and that the Agreement imposed specific commitments and obligations on Johnson.

39.    The letter also informed Mr. Sockol that genX had not released Johnson from the obligations under the Agreement, and that it did not intend to do so in the future.  The letter further informed Mr. Sockol that the Agreement and the obligations thereunder extended into the year 2007.

40.    By letter dated January 27, 2005, genX reminded Johnson of his commitments and obligations under the Agreement.  The letter advised Johnson that Repromedix was a competitor organization in the same market and customer base as genX, and that by accepting a position with Repromedix, Johnson was in breach of the Agreement.  The letter further informed Johnson that genX was enforcing its rights under the Agreement, and would not release Johnson from his obligations.

41.    After sending the aforementioned letters to Repromedix and Johnson, Cecchi again placed a phone call with Mr. Sockol to ascertain if Repromedix was proceeding with Johnson's hiring.   Despite being aware of the Agreement, and the obligations imposed on Johnson thereunder, Mr. Sockol advised Cecchi that Repromedix would proceed with Johnson's hiring.

42.    Upon information and belief, Johnson has been hired by Repromedix and is scheduled to begin his employment in or about February 2005.  Repromedix has offered Johnson a base salary and commission schedule far in excess of the industry standard for sales representatives with Johnson's level of education and experience.

43.    On or about February 3, 2005, at or around 5:15 p.m., Johnson appeared at Mezezi's office.

44.    Johnson stated to Mezezi that that he had contacted genX's customers to inform them that he would no longer be working with genX and had accepted a position with Repromedix.  Johnson acknowledged that his actions were in contravention of the Agreement.

45.    Johnson further indicated that he had contacted genX's customers during his employment with genX to inquire about those customer's opinions of Repromedix as well as his possible move to Repromedix.

46.    Johnson also stated that he had contacted genX customers during a visit to Repromedix in November 2004, during which Johnson interviewed for a position with Repromedix.

47.    Johnson further indicated that he planned to use the contacts and customer relationships he had developed during his employment with genX in his new position with Repromedix.

48.    After conducting an audit on the company computer Johnson used during his employment with genX, genX discovered that Johnson had, without genX's authorization or consent, removed his contacts list from genX's server. The contacts list Johnson removed contained various information concerning genX's clients and customers.

49.    Upon information and belief, while employed by genX, Johnson misappropriated genX's confidential, proprietary and trade secret information, including but not limited to genX's formulas, research and product development compilations, processes, product lists, customer lists and compilations of customer purchasing habits, for his and Repromedix' benefit. Upon information and belief, Johnson has disclosed or plans to disclose such confidential, proprietary and trade secret information to Repromedix

**FIRST CAUSE OF ACTION**
**(Breach of Contract Against Johnson)**

48.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 47 as if fully set forth herein.

49.    Johnson breached the terms of the Agreement by the following actions:

a.    accepting employment with Repromedix within two years of his termination of employment with genX;

10

b.    contacting and soliciting existing genX clients and customers while employed by genX to induce said clients and customers to do business with himself and/or Repromedix;

c.    contacting and soliciting existing genX clients and customers to induce said clients and customers to do business with himself and/or Repromedix within two years of his termination of employment with genX;

d.    disclosing genX's confidential, proprietary and/or trade secret information while employed by genX;

e.    disclosing genX's confidential, proprietary and/or trade secret information within two years of his termination of employment with genX;

50.    As a result of Johnson's breach of contract, genX has and continues to suffer immediate and irreparable injury and loss to its business including its good will, reputation and name, for which there is no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Breach of the Duty of Loyalty Against Johnson)

51.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 as if set forth fully herein.

52.    As a genX employee, Johnson had a duty of good faith and loyalty to genX, to act solely for genX's benefit in all matters regarding his employment.

53.    Prior to his leaving his employment with genX, Johnson breached his duty of loyalty to genX by the following actions:

a.  contacting and soliciting existing genX clients and customers to induce said clients and customers to do business with himself and/or Repromedix;

b.  contacting and soliciting prospective genX clients and customers to induce said clients and customers to do business with himself and/or Repromedix;

b.  misappropriating genX's confidential, proprietary and trade secret information for his and Repromedix' benefit;

c.  disclosing genX's confidential, proprietary and trade secret information to Repromedix.

54.  As a direct and proximate result of these acts, genX has been caused to sustain damage and injury to its business.

### THIRD CAUSE OF ACTION
**(Tortious Interference With Contractual Relations Against Repromedix)**

55.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 as if set forth fully herein.

56.  Repromedix knew of the contract between genX and Johnson and was aware of the commitments and obligations the contract imposed.

57.  Repromedix intentionally interfered with and continues to intentionally interfere with the contractual relations between genX and Johnson in that induced Johnson to breach his contract with genX for the purpose of soliciting genX's clients and customers, and to use genX's trade secrets, confidential information and other proprietary information for its benefit.

58.     By such interference with this contractual relationship, Repromedix has attempted to divert and/or has diverted from genX and has otherwise impaired the business relationships between genX and one or more of its clients and customers.

59.     As a direct and proximate result of these acts, genX has been caused to sustain damage and injury to its business.

60.     By the foregoing acts, Repromedix has acted fraudulently, willfully, intentionally, maliciously and with the intent to harm genX.

61.     By reason of the foregoing, Repromedix has tortiously interfered with the contractual relations between genX and Johnson, in that, knowing of such contract, Repromedix nonetheless sought to interfere with it, did interfere with it, and profited from such interference, and further has caused genX to sustain irreparable damages which it continues to suffer as well as actual loss, for which Defendant Repromedix is liable.

## FOURTH CAUSE OF ACTION
### (Tortious Interference with Business Relations Against All Defendants)

62.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 61 as if set forth fully herein.

63.     Johnson, by virtue of his employment with genX, knew of the relationships between genX and its clients and customers, which relationships constitute advantageous business relationships with genX.

64.     Repromedix, by virtue of its current or prospective employment of Johnson, and by reason of Johnson's prior association with genX, knew of the relationships between genX and its customers and clients, which relationships constitute advantageous business relationships with genX.

13

65.    genX's clients and customers ordinarily maintain long-term and continuous business relationships with genX, to their mutual economic benefit. These business relationships are such that they normally continue, unless interfered with by a third person or entity.

66.    Defendants were aware of one or more of the business relationships in existence between genX and various third-party customers and clients.

67.    Defendants intentionally interfered with and continue to intentionally interfere with the advantageous business relationships between genX and its clients and customers by means of deceptive and unfair competitive acts, including an overall course of conduct to solicit genX's clients and customers from genX, and to use genX's trade secrets, confidential information and other proprietary information for their benefit.

68.    By such interference with these advantageous business relationships, Defendants have attempted to divert and/or diverted from genX and have otherwise impaired the business relationship between genX and one or more of its clients and customers.

69.    As a direct and proximate result of these acts, genX has been caused to sustain damage and injury to its business.

70.    By the foregoing acts, Defendants have acted fraudulently, willfully, intentionally, maliciously and with the intent to harm genX.

71.    By reason of the foregoing, Defendants have tortiously interfered with the business relations between genX and its clients and customers in that, knowing of such business relations, Defendants nonetheless sought to interfere with them, did interfere with them, and profited from such interference, and further have caused genX

to sustain irreparable damages which it continues to suffer as well as actual loss, for which Defendants are liable.

### (FIFTH CAUSE OF ACTION)
### Misappropriation of Trade Secrets Against Johnson

72.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 71 as if set forth fully herein.

73.    Johnson conspired to leave the employment of genX and work for Repromedix, a genX competitor.

74.    Upon information and belief, Johnson misappropriated confidential, proprietary and trade secret information belonging to genX, including but not limited to genX's formulas, research and product development compilations, processes, product lists, customer lists, and compilations of customer purchasing habits.

75.    While employed by Repromedix, or for use in future employment with Repromedix, Johnson has utilized genX's confidential, proprietary and trade secret information in order to benefit himself and his new employer, all to the detriment of genX.

76.    By his foregoing actions, Johnson has misappropriated confidential, proprietary and trade secret information from genX, in violation of Connecticut General Statutes § 35-50 et seq.

77.    As a result of Johnson's misappropriation of confidential, proprietary and trade secret information, genX has and continues to experience immediate and irreparable injury and loss to its business including its good will, reputation and name for which there is no adequate remedy at law.

## (SIXTH CAUSE OF ACTION)
### Misappropriation of Trade Secrets Against Repromedix

78.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 75 as if set forth fully herein.

79.    Upon information and belief, Johnson has disclosed and/or used genX's confidential, proprietary and trade secret information without genX's consent and within the course and scope of his affiliation with or employment by Repromedix.

80.    Repromedix knew or had reason to know that genX's confidential, proprietary and trade secret information was acquired by Johnson by improper means and yet Repromedix encouraged and/or induced Johnson to breach the Agreement with genX and his duty of loyalty owed to genX and use confidential, proprietary and trade secret information for the benefit of Repromedix.

81.    By reason of the foregoing, Repromedix has misappropriated genX's confidential, proprietary and trade secret information in violation of Connecticut General Statutes § 35-50 et seq.

82.    Repromedix' use of genX's confidential, proprietary and trade secret information has caused and will continue to cause immediate and irreparable injury and loss to genX's business, including its good will, reputation and name, for which there is no adequate remedy at law.

83.    By reason of the foregoing, genX has sustained actual loss.

84.    By reason of the foregoing, Repromedix has been unjustly enriched.

**(SEVENTH CAUSE OF ACTION)**
## Willful and Malicious Misappropriation of Trade Secrets Against All Defendants

85.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 84 as if set forth fully herein.

85.    Because Johnson was aware, and Repromedix was notified and made aware, of Johnson's commitments and obligations under the Agreement, their actions in misappropriating genX's confidential, proprietary and trade secret information have been wanton, willful and malicious and were taken with reckless indifference to the rights of genX and with intent to violate those rights.

86.    Johnson and Repromedix have willfully and maliciously misappropriated genX's trade secrets in violation of Connecticut General Statutes § 35-53.

87.    By reason of the foregoing, genX has sustained actual loss.

88.    By reason of the foregoing, Johnson and Repromedix have been unjustly enriched.

**(EIGHTH CAUSE OF ACTION)**
## Computer Conversion Against Johnson

89.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 88 as if set forth fully herein.

90.    Johnson accessed genX's computer system without permission with the intent to obtain genX's customer and client contact information.

91.    Johnson also, as a result of his accessing genX's computer system, intentionally removed the customer and client contact information contained in genX's computer system.

92.    Johnson misused genX's computer system information in violation of Conn. Gen. Stat. §§ 53a-251(c) and (e).

93.    By reason of the foregoing, genX has suffered injury to its business and property.

## (NINTH CAUSE OF ACTION)
## Civil Conspiracy Against All Defendants

94.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 93 as if set forth fully herein.

95.    By engaging in the foregoing acts, Johnson and Repromedix conspired to solicit genX's clients and customers while Johnson was employed by genX and after Johnson left genX's employment, and have solicited genX's customers and clients.

96.    By engaging in the foregoing acts, Johnson and Repromedix conspired to convert and/or misappropriate and use genX's trade secrets, confidential information and other proprietary information for their mutual benefit, and have converted and/or misappropriated and used genX's trade secrets, confidential information and other proprietary information for their mutual benefit.

97.    By conspiring to commit the foregoing wrongful acts, and committing the foregoing wrongful acts, Defendants have caused genX to sustain irreparable damages which it continues to suffer as well as actual loss, for which Defendants are liable.

## (TENTH CAUSE OF ACTION)
## Aiding and Abetting Against Repromedix

98.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 91 as if set forth fully herein.

99. By engaging in the foregoing acts, Repromedix aided and abetted Johnson's breach of the Agreement, breach of his duty of loyalty to genX, tortious interference with genX's business relations and misappropriation of genX's confidential, proprietary and trade secret information.

100. By reason of the foregoing, Repromedix has caused genX to sustain irreparable damages which it continues to suffer as well as actual loss, for which Repromedix is liable.

**(ELEVENTH CAUSE OF ACTION)**
**Unfair Trade Practices Against Johnson**

101. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 100 as if set forth fully herein.

102. Johnson's conduct, including his unauthorized taking and use of genX's confidential, proprietary, and trade secret information, competition, and solicitation and diversion of business from genX, was conducted with reckless disregard for his contractual obligation not to engage in such conduct.

103. Johnson's conduct, including his unauthorized taking and use of genX's confidential, proprietary, and trade secret information, competition, and solicitation and diversion of business from genX, constitutes unfair competition and unfair acts or practices in the conduct of trade or commerce.

104. By engaging in the foregoing acts and conduct, Johnson has violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes ("C.G.S."), §42-110a et seq.

105. By reason of the foregoing, genX has sustained ascertainable loss.

106.    Unless Johnson is enjoined from committing further unfair acts or practices violative of CUTPA, genX will suffer irreparable harm to its business including its good will, reputation and name, for which there is no adequate remedy at law.

### (TWELFTH CAUSE OF ACTION)
### Unfair Trade Practices Against Repromedix

107.    Plaintiff repeats and realleges allegations set forth in paragraphs 1-106 as if set forth fully herein.

108.    Repromedix's conduct, including its inducing Johnson to breach his contract with genX, misappropriation of genX's confidential, proprietary and trade secret information, conspiring with Johnson to solicit genX's clients and customers and to misappropriate and use genX's trade secrets, confidential information and other proprietary information for their benefit, and aiding an abetting Johnson's wrongful conduct constitutes unfair competition and unfair acts or practices in the conduct of trade or commerce.

109.    By reason of the foregoing, genX has sustained ascertainable loss.

110.    Unless Repromedix is enjoined from committing further unfair acts or practices violative of CUTPA, genX will suffer irreparable harm to its business including its good will, reputation and name, for which there is no adequate remedy at law

WHEREFORE, genX international, inc. and IVFonline, LLC request judgment against the Defendants, jointly and severally as follows:

1.    On the first cause of action, temporary restraining order, preliminary and permanent injunctive relief against the Defendants and all persons acting under their discretion or control or in concert with them as follows:

a.    for a period of two (2) years following Johnson's January 25, 2005
      termination of employment with genX, Johnson shall not be
      employed by, connected with, participate in, consult or otherwise
      associate with any other business, enterprise or venture that is the
      same as, similar to or competitive with genX, including but not
      limited to Repromedix;

b.    for a period of two (2) years following Johnson's January 25, 2005
      termination of employment with genX,  Defendants and all persons
      acting under their direction or control or in concert with them be and
      are hereby restrained and enjoined from:

      (i)    contacting or soliciting any genX customer/client or
             accepting an invitation from any genX customer/client for the
             purpose of doing business with such customer/client;

      (ii)   contacting or soliciting any prospective genX customer/client
             or accepting an invitation from any prospective genX
             customer/client for the purpose of doing business with such
             customer/client.

c.    for a period of two (2) years following Johnson's January 25, 2005
      termination of employment with genX, Johnson shall not disclose
      any of genX's confidential, proprietary and/or trade secret
      information;

      d.    a temporary restraining order and preliminary and permanent injunction enjoining Defendants from using any of genX's trade secrets and/or confidential information.

    2.    Money damages in an amount to be determined at trial, with interest thereon;

    3.    An order requiring Defendants to account for and to pay over to genX all gains and profits they have acquired by reason of their wrongful conduct;

    4.    An order requiring Defendants to account for and return all genX records that have at any time come into their possession.

    5.    Punitive damages under C.G.S. §35-53, C.G.S. §42-110g(d) and/or C.G.S. § 52-570b;

    6.    Attorney's fees under C.G.S. §42-110g(d) and/or C.G.S. § 52-570b;

    7.    costs and disbursements; and

    8.    Such other relief as may be just and equitable.

**THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

                                 **GENX INTERNATIONAL, INC.**
                                    **IVFONLINE, LLC**

By:_____

Glenn A. Duhl BBO#653001
Siegel, O'Connor, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford, CT 06103
(860) 727-8900
Fax: (860) 527-5131
gduhl@siegeloconnor.com

Dated March 3, 2005

## CONFIDENTIALITY NON-COMPETE AGREEMENT

THIS NON-COMPETE AGREEMENT ("Agreement") is made as of **November 15, 2001**, by and between **<genX> international, inc./lVFonline.com** ("Employer") and Jeremy Johnson ("Employee").

Employee desires to give, and Employer desires to receive from Employee, a covenant not to engage, either directly or indirectly, in competition with, or to solicit any customer, client, or account of, Employer.

Employer and Employee desire to set forth in writing the terms and conditions of their agreements and understandings.

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending legally to be bound, hereby agree as follows:

### 1. Covenants Against Competition.

Employee acknowledges that the services to be rendered to Employer have a significant and material value to Employer, the loss of which cannot adequately be compensated by damages alone. In view of the significant and material value to Employer of the services of Employee for which Employer has employed Employee; and the confidential information obtained by or disclosed to Employee as an employee of Employer; and as a material inducement to Employer to employ Employee and to pay to Employee compensation for such services to be rendered for Employer by Employee (it being understood and agreed by the parties hereto that such non-competition shall also be paid for and received in consideration hereof), Employee covenants and agrees as follows:

A. During Employee's employment by Employer and for a period of two (2) years after Employee ceases to be employed by Employer, Employee shall not within Canada, United States or countries directly or indirectly, either for Employee's own account or as a partner, shareholder (other than shares regularly traded in a recognized market), officer, employee, agent or otherwise, be employed by, connected with, participate in, consult or otherwise associate with any other business, enterprise or venture that is the same as, similar to or competitive with Employer. By way of example, and not as a limitation, the foregoing shall preclude Employee from soliciting business or sales from, or attempting to convert to other sellers or providers of the same or similar products or services as provided by Employer, any customer, client or account of Employer with which Employee has had any contact during the term of employment.

B. During employment and for a period of two (2) years thereafter, Employee shall not, directly or indirectly, solicit for employment or employ any employee of Employer.



C. During employment, and thereafter two (2) years, Employee shall not disclose to anyone any Confidential Information. For the purposes of this Agreement, "Confidential Information" shall include any of Employer's confidential, proprietary or trade secret information that is disclosed to Employee or Employee otherwise learns in the course of employment such as, but not limited to, business plans, customer lists, financial statements, software diagrams, flow charts and product plans. Confidential Information shall not include any information which; (i) is or becomes publicly available through no act of Employee, (ii) is rightfully received by Employee from a third party without restrictions; or (iii) is independently developed by Employee.

## 2. **At Will**.
Employee acknowledges that Employee's employment is "at will", subject to applicable law, and that either Employer or Employee may terminate employment at any time, with or without notice, for any reason or no reason whatsoever. Nothing in this Agreement shall constitute a promise of employment for any particular duration or rate of pay.

## 3. **Accounting for Profits**.
Employee covenants and agrees that, if Employee shall violate any covenants or agreements in Section 1 hereof, Employer shall be entitled to an accounting and repayment of all profits, compensation, commissions, remunerations or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of or in connection with any such violation; such remedy shall be in addition to and not in limitation of any injunctive relief or other rights or remedies to which Employer is or may be entitled at law or in equity or under this Agreement.

## 4. **Reasonableness of Restrictions**.
A. Employee has carefully read and considered the provisions of Section 1 hereof and, having done so, agrees that the restrictions set forth therein (including, but not limited to, the time period of restriction and the geographical areas of restriction) are fair and reasonable and are reasonably required for the protection of the interests of Employer, its officers, directors, shareholders and other employees.

B. In the event that, notwithstanding the foregoing, any part of the covenants set forth in Section 1 hereof shall be held to be invalid or unenforceable, the remaining parts thereof shall nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included therein. In the event that any provision of Section 1 relating to time period and/or areas of restriction shall be declared by a court of competent jurisdiction to exceed the maximum time period or areas such court deems reasonable and enforceable, the agreed upon time period and/or areas of restriction shall be deemed to become and thereafter be the maximum time period and/or areas which such court deems reasonable and enforceable.

## 5. **Burden and Benefit**.
This Agreement shall be binding upon, and shall inure to the benefit of, Employer and Employee, and their respective heirs, personal and legal representatives, successors and assigns.

6. **Governing Law**.
Construction and interpretation of this Agreement shall at all times and in all respects be governed by the laws of the State of Connecticut.

7. **Severability**.
The provisions of this Agreement (including particularly, but not limited to, the provisions of Section 1 hereof) shall be deemed severable, and the invalidity or unenforceability of any one or more of the provisions hereof shall not affect the validity and enforceability of the other provisions hereof.

8. **Employer**.
As used herein, the term "Employer" shall include any corporation which is at any time a parent or subsidiary of Employer.

9. **Notices**.
Any notice required to be or otherwise given hereunder shall be sufficient if in writing, and sent by certified or registered mail, return receipt requested, first-class postage prepaid, as follows:

> If to Employer:
> \<genX\> international, inc./IVFonline.com
> **393 Soundview Road**
> **Guilford, CT 06437**

> If to Employee:
> Jeremy Johnson
> **345 Colborne St.**
> Elora, ON N0B1S0

or to such other address designated by either party following notice to the other.

10. **Entire Agreement**.
This Agreement contains the entire agreement and understanding by and between Employer and Employee with respect to the covenant against competition herein referred to, and no representations, promises, agreements or understandings, written or oral, not herein contained shall be of any force or effect. No change or modification hereof shall be valid or binding unless the same is in writing and signed by the party intended to be bound.

11. **No Waiver**.
No waiver of any provision of this Agreement shall be valid unless the same is in writing and signed by the party against whom such waiver is sought to be enforced; moreover, no valid waiver of any provision of this Agreement at any time shall be deemed a waiver of any other provision of this Agreement at such time or will be deemed a valid waiver of such provision at any other time.

12. **Headings**.

The headings used herein are for the convenience of the parties only and shall not be used to define, enlarge or limit any term of this Agreement.

IN WITNESS WHEREOF, Employer and Employee have duly executed this Agreement under seal as of the day and year first above written.

IVFonline.com

**[Employee] Signature Block**

By: _____

Monica Mezezi, MBA
President

Jeremy Johnson

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

genX international, inc. and
IVFonline.com, LLC

**DEFENDANTS**

Jeremy Johnson and
Repromedix Corp.

**(b)** County of Residence of First Listed Plaintiff    New Haven, CT
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    n/a
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Glenn A. Duhl, Siegel, O'Connor, O'Donnell & Beck., P.C.,
150 Trumbull Street, Hartford, CT 06103, (860) 727-8900

Attorneys (If Known)

Not known.

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY

☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS

☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS

☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY

☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc Security Act

### BANKRUPTCY

☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY

☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN    (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332

Brief description of cause:
Breach of non-disclosure and non-compete agreement.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE    03/03/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2005 MAR -4  A 11: 24

U.S. DISTRICT COURT
DISTRICT OF MASS

1.  **Title of case (name of first party on each side only)**

    genX international, inc. v. Jeremy Johnson

2.  **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).**

    | | | |
    |---|---|---|
    | ___ | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
    | ___ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.  for patent, trademark or copyright cases |
    | _X_ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
    | ___ | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
    | ___ | V. | 150, 152, 153. |

3.  **Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

    Not Applicable

4.  **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

    YES ☐     NO ☒

5.  **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)**

    YES ☐     NO ☒

    **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**

    YES ☐     NO ☐

6.  **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

    YES ☐     NO ☒

7.  **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**

    YES ☐     NO ☒

    A.    If yes, in which division do all of the non-governmental parties reside?

    Eastern Division ☐          Central Division ☐          Western Division ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division  ☒          Central Division ☐          Western Division ☐

8.  **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)**

    YES ☐     NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Glenn A. Duhl

ADDRESS _____   Siegel, O'Connor, O'Donnell & Beck, P.C.

_____   150 Trumbull Street, Hartford, CT 06103

TELEPHONE NO. _____   (860) 727-8900

(Coversheetlocal05.wpd - 2/15/05)