UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                  :
GENX INTERNATIONAL, INC. and  :  CIVIL ACTION NO. 05-CV-10419(DPW)
IVFONLINE.COM, LLC,            :      Discovery Referred to (MBB)
                                    :
                                    :
      Plaintiffs,               :
v.                              :
                                    :
JEREMY JOHNSON and           :
REPROMEDIX CORP.,            :
                                    :
_____Defendants._____: May 8, 2006

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO
MOTION TO COMPEL

In accordance with the Court's order granting Plaintiffs' Motion for Leave to File

Reply Brief, entered on April 28, 2006, Plaintiffs hereby submit this Reply to Defendants'

Memorandum in Opposition to Plaintiffs' Motion to Compel, dated and filed April 11,

2006.

### 1.    Defendants Have Improperly Attempted To Litigate The Merits Of Plaintiffs' Claims In Their Memorandum In Opposition.

In their opposition, Defendants devote the better part of two pages attempting to

litigate the merits of Plaintiffs' claims. *See* Memo in Opp. at 3-5.[1] Defendants' improper

attempt to argue their impressions of Plaintiffs' claims should not be considered by the

Court in ruling on Plaintiffs' Motion to Compel. It is axiomatic that discovery is not a test

of the merits of a party's claims. Rather, discovery is a tool for gathering evidence to be

---

[1] Additionally, Defendants' recitation of Plaintiffs' interrogatory responses are incomplete. With respect to whether Plaintiffs and Repromedix compete, Defendants neglect to note other factors that Plaintiffs demonstrated with respect to how they compete with Repromedix. Defendants also omit portions of Plaintiffs' responses to Defendants' interrogatories concerning their trade secrets claims. After Defendants contend that "genX has failed to specify the trade secrets that it alleges Defendants misappropriated," they go on to list such trade secrets. Defendants have not suggested that Plaintiffs have failed to fully answer any of their interrogatories.

used to test the merits of a party's claim.  Consequently, Defendants' naked assertions regarding the merits of Plaintiffs' claims are entirely irrelevant to the Motion to Compel.

### 2. Plaintiffs Complied With Their Obligations Under The Federal And Local Rules Of Civil Procedure Prior To Filing Their Motion To Compel.

In their opposition, Defendants contend that Plaintiffs did not comply with Federal and Local Rules of Civil Procedure concerning the obligation of counsel to confer before filing discovery motions.  *See* Memo. In Opp. at 8-10.  Defendants first protest that Plaintiffs' motion does not contain a certification pursuant to Local Rule 7.1(a)(2).  However, Plaintiffs' motion did contain a certification that the provisions of Local Rule 37.1 had been complied with.  *See* Mot. to Comp. at 2.  Local Rule 37.1's requirements are similar, if not identical, to those found in Local Rule 7.1(a)(2).  *Compare* L.R. 37.1(A)("Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent") *with* L.R. 7.1(a)(2)("No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue").  Consequently, Plaintiffs satisfied the spirit of the Local Rules' certification requirements and Defendants' form over substance argument lacks merit.

Defendants also maintain that Plaintiffs prematurely filed their Motion to Compel with respect to those discovery requests subject to Plaintiffs' Proposal, as outlined at page 7 of Plaintiffs' Memorandum of Law in Support of Motion to Compel.[2]  However,

---

[2] During the conference, Plaintiffs proposed the following process with respect to Interrogatories 4, 6, and 11 to Johnson, Interrogatories 1, 2, 4, 10, 11 and 12 to Repromedix, Requests for Production 1, 2, 15, 16, 23, 25, 26 and 37 to Johnson and Requests for Production 1, 2, 3, 15, 16, 17, 25 and 30 to Repromedix: (1) Defendants disclose all clients who Johnson has directly contacted on Repromedix's behalf since

the parties attempted to resolve this discovery dispute for approximately three months. These attempts included: (1) two telephone conferences; (2) multiple letters outlining the parties' positions; and (3) numerous emails concerning the discovery dispute.

Moreover, Plaintiffs followed up by email following the parties' February 27, 2006 telephone conference to ascertain whether Defendants would agree to Plaintiffs' Proposal.  *See* email from Glenn Duhl to John Bauer (attached as Exhibit A).  After receiving no response, and more than three weeks having passed since the parties' last telephone conference, Plaintiffs had no choice but to seek judicial intervention.  Indeed, Defendants themselves concede that they took too long responding to Plaintiffs' Proposal.  *See* Memo. In Opp. at 7 ("Counsel for the Defendants admittedly took longer then they should have in responding to genX's proposal").  Further, during the February 27, 2006 telephone conference, Defendants were put on notice that Plaintiffs intended to file a motion to compel in the near future with respect to the discovery requests outside the scope of Plaintiffs' Proposal.  Therefore, Defendants' suggestion that they were unaware that a motion to compel was coming or that Plaintiffs' filing was "rash" is simply not credible.

The exchange among the parties here clearly satisfied Federal and Local Rules of Civil Procedure calling for counsel to confer in good faith regarding discovery disputes.  *See LaFleur v. Teen Help*, 342 F.3d 1145, 1152 (10th Cir. 2003)(holding that meeting in person and then sending a written clarification of the discovery requested

---

September 1, 2004; (2) Johnson gives an affirmative representation to Plaintiffs that he has not indirectly contacted Plaintiffs' clients by disclosing the names or other information pertaining to such clients to anyone affiliated with Repromedix; (3) counsel for the parties review together the list of Johnson's contacts against genX's client list to determine where there is overlap; (4) after determining where there is overlap, counsel may communicate with their respective clients regarding the ramifications of the overlap with respect to Plaintiffs' claims.

and *receiving no response* satisfied obligation to confer in good faith regarding discovery disputes); *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260, n. 4 (8th Cir. 1997)(holding that counsel contacting opposing counsel regarding the discovery issues and not requesting judicial intervention until opposing counsel *failed to respond* or the parties failed to agree satisfied obligation to confer in good faith regarding discovery disputes).

Incredibly, Defendants urge that Plaintiffs' filing has placed in unwarranted burden on judicial resources and has caused them to incur considerable effort and expense opposing Plaintiffs' motion. However, it was Defendants' lackadaisical attitude toward discovery that caused Plaintiffs to file their motion. Moreover, instead of informing Plaintiffs that they agreed to their Proposal, Defendants opted to file an opposition setting forth procedural bases as to why Plaintiffs' Motion to Compel should be denied as to those discovery requests that are subject to Plaintiffs' Proposal. Had Defendants simply informed Plaintiffs that they had agreed to Plaintiffs' Proposal, Plaintiffs would have agreed to a stipulation that the parties had reached an accord concerning such discovery requests, obviating Defendants' need to file an opposition. Therefore, Defendants are themselves responsible for any resulting burden on judicial resources or any effort and expense they have incurred as a result of their opposition to Plaintiffs' motion.[3]

At some point, the obligations surrounding conferring over discovery disputes must give way to the obligation to vigorously prosecute one's case. In light of the steps

---

[3] Plaintiffs also note that had Defendants not taken such a blasé approach to these discovery issues, Plaintiffs would not have had to expend energy and expense in preparing a motion on those discovery requests that are the subject of Plaintiffs' proposal. Accordingly, Plaintiffs request that the court to order Defendants to pay them the reasonable expenses they incurred in preparing their Motion to Compel, including attorney's fees.

taken by Plaintiffs to reach an accord concerning the discovery disputes subject to their Proposal, and the lack of response from Defendants, Plaintiffs were obligated to proceed with the prosecution of their case. Accordingly, while the parties are not in dispute concerning those discovery requests subject to Plaintiffs' Proposal,[4] Defendants procedural arguments should be disregarded by the Court.

### 3. Plaintiffs' Motion to Compel With Respect To Discovery Requests Outside Of Plaintiffs' Proposal Should Be Granted.

#### a. Defendants improperly allocate their burden to Plaintiffs.

In their opposition, Defendants continually argue that Plaintiffs have not "demonstrated" why the discovery requests outside of Plaintiffs' Proposal are relevant to this litigation. However, it is well-settled that "the objecting party…bears the burden of showing why discovery should be denied." *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 70 (D. Conn. 2004)(citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). This burden allocation is in harmony with the general principle that "the deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Therefore, it is Defendants' burden to demonstrate "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)(citations and internal quotation marks omitted). As has been demonstrated in Plaintiffs' moving papers, and will be further

---

[4] Therefore, at this time, the following discovery requests remain for the Court's consideration: Interrogatory 2 to Johnson; Requests for Production 4, 17, 18, 30, 31, 33, and 34 to Johnson; and Requests for Production 18, 27, 29, and 35 to Repromedix.

demonstrated below, Defendants cannot meet *their* burden of showing why Plaintiffs' discovery requests are objectionable.

>   b. Plaintiffs' Motion to Compel as to Interrogatory 2 to Johnson and Request for Production 35 to Repromedix should be granted.

In their opposition, Defendants maintain that any immigration petitions that Johnson filed,[5] the subject of Interrogatory 2 to Johnson and Request for Production 35 to Repromedix, is not relevant to this case. *See* Memo. In Opp. at 10-11. However, as Plaintiffs pointed out in their moving papers, such information bears on Johnson's credibility. Rule 608(b) of the Federal Rules of Evidence provides that specific instances of misconduct "may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness...." Certainly, information regarding a witness being in the United States illegally or falsifying immigration papers is probative of that witnesses' character for truthfulness or untruthfulness. Resolution of many issues in this case will likely hinge on credibility assessments made by a jury. Plaintiffs need the information sought by these discovery requests to determine whether Johnson has complied with federal immigration laws for purposes of measuring Johnson's character for truthfulness or untruthfulness.

As Plaintiffs also pointed out in their moving papers, this information is probative of the value of Johnson to Repromedix. In their complaint, Plaintiffs generally allege that Johnson and Repromedix worked in concert to misappropriate Plaintiffs' confidential, proprietary and trade secret information. Evidence of any effort and money

---

[5] Johnson was born in Canada, *see* Jeremy Johnson's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production at 2 (Exhibit B), and worked for several years in Canada. He also communicated with Repromedix regarding a visa prior to coming to the United States as a Repromedix employee. *See* Facsimile from Jeremy Johnson to Craig Sockol (Exhibit C).

Repromedix expended with respect to Johnson's immigration petition, if one was made, would show that Repromedix was going above and beyond what employers typically do to procure a prospective employee's services.  Plaintiffs believe that Repromedix was willing to go to these (and other) lengths to obtain Plaintiffs' confidential, proprietary and trade secret information through Johnson.

Moreover, the information is necessary to allow Plaintiffs to construct a timeline of Johnson and Repromedix's relationship.  Information responsive to these requests will shed light on when Defendants had begun making real commitments to one another, which Plaintiffs suspect was well before Johnson left Plaintiffs' employment.

Plaintiffs have set forth not one, but three bases for why these discovery requests are relevant.  Defendants have not sustained their burden of demonstrating why the liberal discovery rules do not warrant production of this information. Accordingly, Plaintiffs' Motion to Compel with respect to Interrogatory 2 to Johnson and Request for Production 35 to Repromedix should be granted.

> c.    Plaintiffs' Motion to Compel as to Request for Production 4 to Johnson should be granted.

In their opposition, Defendants maintain that Johnson's tax information, which Plaintiffs seek by way of Request for Production 4 to Johnson, is not relevant to this case.  *See* Memo. In Opp. at 11-12.  However, as Plaintiffs pointed out in their moving papers, Johnson's tax returns are probative of his credibility.  As noted earlier, Rule 608(b) of the Federal Rules of Evidence provides that specific instances of misconduct "may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness...."  Evidence that a witness has failed to pay taxes is a

matter which affects the witness's credibility.  *See Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir. 1993); *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 208 (E.D.N.Y. 1996). Resolution of many issues in this case will likely hinge on credibility assessments made by a jury.  Plaintiffs need the information sought by these discovery requests to determine whether Johnson has complied with the federal tax code for purposes of measuring Johnson's character for truthfulness or untruthfulness.

As Plaintiffs also pointed out in their moving papers, the information is also relevant to damages.  Plaintiffs will likely pursue a disgorgement theory of damages, seeking to divest Johnson of any gains he realized by virtue of his wrongful conduct.  In order to identify such damages with certainty, Plaintiffs need information identifying precisely what Johnson has earned in his employment with Repromedix.  Defendants have resisted Plaintiffs' attempts to seek this information through other means. Plaintiffs need Johnson's tax information to adequately identify their damages, and until Defendants produce information concerning the monetary compensation Johnson has earned with Repromedix, along with the source of such compensation, this information is unavailable to Plaintiffs.

Once again, Plaintiffs have set forth not one, but two bases for why this discovery request is appropriate.  Defendants have not sustained their burden of demonstrating why the liberal discovery rules do not warrant production of this information. Accordingly, Plaintiffs' Motion to Compel with respect to Request for Production 4 to Johnson should be granted.

        d.      Plaintiffs' Motion to Compel as to Requests for Production 17, 30, and 31 to Johnson and Requests for Production 27 and 29 to <u>Repromedix should be granted.</u>

Defendants generally maintain that Requests for Production 17, 30, and 31 to Johnson, and Requests for Production 27 and 29 to Repromedix are unnecessary, given that Defendants have agreed to Plaintiffs' Proposal.  *See* Memo. In. Opp. at 12-15, 16-18.  However, given the posture of the case at this time, coupled with the fact that Plaintiffs are not satisfied that Defendants' explanations for many of their actions are credible, Plaintiffs need this information to corroborate the information Defendants have supplied concerning the entities Johnson has contacted on Repromedix's behalf, some of which may be Plaintiffs' customer contacts.   Plaintiffs are entitled to verify what Defendants claim to be true.  Plaintiffs need the requested information to conduct such an investigation.

        i.      Johnson's business related expense receipts and requests for reimbursement (Request 27 to Repromedix) should be <u>produced.</u>

The only justification Defendants provide in support of their argument that this discovery request is objectionable is that it will touch on information provided through Plaintiffs' Proposal.  *See* Memo. In Opp. at 12-13.  However, as noted above, this information is necessary to corroborate the information Defendants have supplied concerning the entities Johnson has contacted on Repromedix's behalf, some of which may be Plaintiffs' customer contacts.  Defendants have submitted no other basis as to why these discovery requests are objectionable.  Accordingly, the Motion to Compel with respect to Request for Production 27 to Repromedix should be granted.

ii.    Johnson's telephone records (Request 30 to Johnson and Request 29 to Repromedix) should be produced.

With respect to Request for Production 30 to Johnson and Request for Production 29 to Repromedix, Defendants contend that these requests may disclose personal calls made by Johnson. *See* Memo in Opp. at 14. Defendants then make a leap and proclaim that "[c]learly, this request is overbroad." *Id.* Defendants offer no justification for their over breadth claim. They do not reveal how Johnson will be prejudiced by the request. Defendants have not sustained their burden of demonstrating why the liberal discovery rules do not warrant production of this information. Accordingly, Plaintiffs' Motion to Compel with respect to Request for Production 30 to Johnson and Request for Production 29 to Repromedix should be granted.

iii.    All documents concerning bids for accounts that Johnson directly or indirectly assisted Repromedix in preparing (Request 17 to Johnson) should be produced.

With respect to Request for Production 17 to Johnson, Defendants argue that they cannot ascertain what the phrase "bids for accounts" means. Yet four lines later, they state that "[i]n fact, Johnson does not prepare formal bids for accounts" but has "prepared proposal letters that he delivered during his initial visits to…potential clients." *Id.* at 16-17. These "proposal letters" are responsive to this request and should be produced.

Defendants also state that these proposal letters contain price quotes, which Defendants characterize as confidential information. *Id.* at 17. But as Plaintiffs noted time and time again in their moving papers, it is well-settled that a party seeking judicial protection from disclosing its confidential or proprietary information bears the burden of

showing that the information is, indeed, confidential and proprietary and that its disclosure would be harmful. *See ITT Electro-Optical Products Div. of ITT Corp. v. Electronic Technology Corp.*, 161 F.R.D. 228, 231 (D. Mass. 1995)(citations omitted). Aside from a bald assertion that the information is confidential, Defendants have not identified why the information is confidential or how its disclosure would be harmful.

Further, even assuming, *arguendo*, that the information is confidential or proprietary and its disclosure would be harmful, Plaintiffs clearly can show a particularized need for the information based on the nature of their claims against Defendants. *See id.* (disclosure of confidential or trade secret information may be had where party seeking information demonstrates that information is relevant and necessary to cause of action)(citations omitted).

Finally, if Defendants are so concerned about revealing their price quotes, Plaintiffs would be amenable to Defendants redacting the specific dollar amount contained in the price quote.

Defendants also disingenuously suggest that Plaintiffs have not set forth the trade secrets they allege Defendants misappropriated, which they suggest militates in favor of denying the Motion to Compel as to this request. *See* Memo. In Opp. at 17. However, Plaintiffs have clearly identified the trade secrets Defendants misappropriated in their response to Defendants' interrogatories. More specifically, Defendants' propounded the following interrogatory on Plaintiff genX international, inc.:

> Identify all of the GenX trade secrets that you allege Johnson and/or Repromedix misappropriated. With respect to each trade secret, identify:
>
> (a)     The extent to which the information is known outside of GenX;
> (b)     The extent to which it is known by GenX's employees and others involved in the business;
> (c)     The measures taken by you to guard the secrecy of the information;

(d)     The amount of effort or money expended by you in developing the information; and

(e)     The ease or difficulty with which the information could be properly acquired or duplicated by others.

In response, genX stated:

genX objects to this Interrogatory for the reason that it is vague, especially inasmuch as it uses the phrases "outside of GenX," "others involved in the business," "amount of effort or money expended by you" and "ease or difficultly with which the information could be properly acquired or duplicated by others," as well as the terms "extent" and "measures." genX also objects to this Interrogatory for the reason that it is overly broad and unduly burdensome. genX also objects to this Interrogatory to the extent it seeks genX's confidential, proprietary and/or trade secret information.

Subject to and without waiving the foregoing objection, Johnson misappropriated: (1) Plaintiffs' customer information, including, but not limited to, information pertaining Plaintiff's leads and information pertaining to Plaintiffs' customer's purchasing habits; (2) information pertaining to Plaintiffs' marketing platforms; (3) information pertaining to various trade shows and meetings in which Plaintiffs were involved; (4) information pertaining to Plaintiffs' business strategies; and (5) Plaintiffs' sales information.

(a)  The trade secrets are not known outside of genX;

(b)  Only genX's key employees involved in marketing and developing its business have access to the trade secrets;

(c)  As a condition of employment, genX requires all employees to execute a confidentiality non-compete agreement as well as an acknowledgement that they have read and understood genX's employee manual which includes provisions relating to confidentiality of information; genX's computers are password protected; a particular genX employee's customer contacts are password protected in such a way so as to only allow that employee and key management personnel access to those customer contacts; genX hires an outside company to ensure the safety and integrity of information contained on its computers; genX maintains a security system to guard its premises.

(d)  genX has spent multiple years and maximum effort developing these trade secrets.  With respect to Plaintiffs' customer information, the cost of developing such information was $3,400,000.

(e)  As to the customer information, the customer contacts and leads cannot be duplicated without substantial effort and expense the customer purchasing habits cannot be duplicated absent misappropriation.  The information relating to Plaintiffs' marketing platforms, the information relating to various trade shows and meetings in which Plaintiffs were involved, the information relating to Plaintiffs' business strategies and Plaintiffs' sales information cannot be duplicated absent misappropriation.

*See* genX international, inc.'s Objections and Responses to Defendants' First Set of Interrogatories to Plaintiff genX international, inc. (Exhibit D) at 11-13. Defendants propounded an identical interrogatory on Plaintiff IVFonline.com, LLC ("IVFonline.com"), to which IVFonline.com tendered an identical response. *See* IVFonline.com, LLC's Objections and Responses to Defendants' First Set of Interrogatories to Plaintiff IVFonline.com, LLC (Exhibit E) at 10-12.

Surely, Plaintiffs have identified the trade secret information they maintain Defendants misappropriated as well as background sufficient to establish that the information warrants trade secret protection. Moreover, Defendants have never suggested that Plaintiffs did not provide a complete response to these interrogatories. Consequently, Defendants' argument is without merit.

Defendants have not sustained their burden of demonstrating why the liberal discovery rules do not warrant production of all documents concerning bids for accounts that Johnson directly or indirectly assisted Repromedix in preparing. Accordingly, Plaintiffs' Motion to Compel with respect to Request for Production 17 to Johnson should be granted.

> iv.  Johnson's calendars, day timers or like instruments (Request 31 to Johnson) should be produced.

With respect to Request for Production 31 to Johnson, Defendants contend that the request is overly broad because it may encompass personal calendars. *See* Memo. In Opp. at 18. However, the request clearly contemplates Johnson's business-related calendars, day-timers or like-instruments, inasmuch as it seeks such items starting from the time period Johnson "commenced his employment with Repromedix." Plaintiffs are not seeking Johnson's personal calendars.

13

Further, Plaintiffs find it difficult to believe that Johnson's information cannot be segregated from Repromedix's, as Defendants maintain. Defendants have not provided an explanation for why they cannot be segregated.

Defendants have not sustained their burden of demonstrating why the liberal discovery rules do not warrant production of this information. Accordingly, Plaintiffs' Motion to Compel with respect to Request for Production 31 to Johnson should be granted.

> e. Plaintiffs' Motion to Compel as to Request for Production 18 to Johnson and Request for Production 18 to Repromedix should be <u>granted.</u>

In Requests for Production 18 to both Johnson and Repromedix, Plaintiffs request "any and all documents concerning the wages, commissions, bonuses, or other remuneration received or earned or to be received or earned by [Johnson] during the course of [his] employment with Repromedix Corp." In their opposition, Defendants contend that Plaintiffs are "overreaching" by requesting this information and that the information is irrelevant. *See* Memo. In Opp. at 15-16.

As Plaintiffs argued in their moving papers, the information is relevant to damages. Plaintiffs will likely pursue a disgorgement theory of damages, seeking to divest Johnson of any gains he realized by virtue of his wrongful conduct. In order to identify such damages with certainty, Plaintiffs need information identifying precisely what Johnson has earned in his employment with Repromedix and for what services the compensation was paid.

As Plaintiffs also noted in their moving papers, the information is probative of Johnson's value to Repromedix. Information surrounding Johnson's compensation as a

Repromedix employee may reveal to what lengths Repromedix was willing to go to procure Johnson's employment.  Plaintiffs maintain that Repromedix provided Johnson a compensation package that was not commensurate with Johnson's level of experience and scientific background.  Plaintiffs believe that Repromedix did this to obtain Plaintiffs' confidential, proprietary and trade secret information through hiring Johnson.

Therefore, these requests are plainly relevant to this case.  As Plaintiffs noted in their moving papers, "[r]elevancy is to be broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action."  *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 10 (D. Mass. 1990)(citations and internal quotation marks omitted)(emphasis in the original). Defendants have not sustained their burden of demonstrating why the liberal discovery rules do not warrant production of this information.  Accordingly, Plaintiffs' Motion to Compel as to Request for Production 18 to Johnson and Request for Production 18 to Repromedix should be granted.

f.      Plaintiffs' Motion to Compel as to Request for Production 33 to Johnson <u>should be granted.</u>

In Request for Production 33 to Johnson, Plaintiffs request that Johnson produce "all business cards collected by [him] during [his] employment with [Plaintiffs]."  In their opposition, Defendants state in a footnote that "aside from business cards from other sales representatives and friends in the industry, Johnson does not have any such business cards."  *See* Memo. In Opp. at 8, n. 3.

15

Defendants have not put forth any reason why this request is objectionable. Accordingly, the motion to compel as to Request for Production 33 to Johnson should be granted.

g.    Plaintiffs' Motion to Compel as to Request for Production 34 to Johnson should be granted.

In Request for Production 34 to Johnson, Plaintiffs request "[a]ny lap top computers, PDAs, and/or cellular telephones in [Johnson's] possession."[6]    In their memorandum in opposition, Defendants suggest that this request is "overbroad and burdensome."  *See* Memo. In Opp. at 19.  In support of this proposition, Defendants baldly state that "production of these items would stifle Johnson's ability to perform his job."  *Id.*

In order to interpose a meritorious objection, a party cannot "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur*, 105 F.R.D. 16 at 42. Rather, the objecting party must demonstrate "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is…overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  *Id.*  Moreover, as Plaintiffs repeatedly stressed in their moving papers, "[i]t is clear that discovery may not be avoided merely because it may involve inconvenience and expense."  *Duncan v. Santaniello v. Duncan*, 1996 WL 121730, at *2 (D. Mass. March 8, 1996)(citations and internal quotation marks omitted)(copy attached

---

[6] Plaintiffs were under the impression that negotiations concerning this request had narrowed the request to the lap top computer Johnson used while employed by Plaintiffs.  To the extent that this is not the case, Plaintiffs are amenable to narrowing the request accordingly.

as Exhibit F).  Defendants have not introduced any evidence to show the nature of the burden they will suffer as a result of production of Johnson's lap top computer.

Moreover, Plaintiffs will conduct a forensic analysis of Johnson's lap top computer, which would generally require creating an image of the computer's hard drive and then having a forensic computer expert analyze the image.  Plaintiffs have been informed by their expert that it generally takes one week to create an image of the hard drive, which means that Johnson would only be unable to use the computer's hard drive for a short period of time.  Further, if necessary, Johnson could install another hard drive and still use the computer during this period.[7]

Additionally, lap top computers in Johnson's possession are clearly relevant to Plaintiffs' claims, especially their misappropriation claims.  While employed by Plaintiffs, Johnson used a lap top computer which he personally owned.  *See* Affidavit of Monica Mezezi (Exhibit H) at ¶ 3.  Johnson's lap top computer was one of his primary workstations in Plaintiffs' Guelph, Ontario office and his primary workstation when he traveled on business.  *Id.* at ¶ 4.  Johnson's lap top computer was able to connect to Plaintiffs' computer infrastructure through wireless networking and the internet.  *Id.* at ¶ 5.

During his employment with Plaintiffs, Johnson accessed Plaintiffs' computer infrastructure through his lap top computer.   *Id.* at ¶ 6.  Johnson maintained Plaintiffs' customer contact information on his lap top computer during his employment with Plaintiffs, and may still have such customer contact information on his lap top computer.  *Id.* at ¶ 7.

---

[7] It should be noted that Johnson testified in his deposition that his lap top is "not in a working state right now."  *See* Deposition of Jeremy Johnson, p. 122, ll. 7-8 (Exhibit G).  If Johnson's lap top is inoperable, it is difficult to believe he will be burdened by this request.

Further, due to the nature of his responsibilities as Plaintiffs' salesperson, Johnson likely maintained other confidential, proprietary and trade secret information belonging to Plaintiffs on his lap top computer during his employment with Plaintiffs, and may still have such information on his lap top computer.   *Id.* at ¶ 8.

Johnson retained his lap top computer after leaving Plaintiffs' employment.  *Id.* at ¶ 9.   Plaintiffs believe that prior to leaving their employ, Johnson transferred their confidential, proprietary and trade secret information onto his lap top computer. Plaintiffs also believe that Johnson retained confidential, proprietary and trade secret information on his lap top computer after leaving their employment.  Plaintiffs need to inspect Johnson's lap top to fully investigate their claims.

Plaintiffs are more than willing to work with Defendants to come up with a mutually agreeable time period in which to conduct the inspection as well as a plan to ameliorate Defendants' concerns regarding any of Defendants' confidential, proprietary or trade secret information which may be stored on Johnson's lap top.

Unquestionably, Johnson's lap top computer is relevant to Plaintiffs' misappropriation claims.  Accordingly, Plaintiffs' Motion to Compel as to Request to Production 34 to Johnson should be granted.

### 4.    Plaintiffs' Motion Was Substantially Justified

In their opposition, Defendants seek reimbursement for the "reasonable expenses Defendants have incurred in opposing [Plaintiffs'] motion, including attorneys' fees," baldly asserting that Plaintiffs' motion was not substantially justified.  *See* Mem. In. Opp. at 20.  While Plaintiffs' Motion to Compel should be granted in its entirety, if the Court were to deny all or part of Plaintiffs' motion, it should not award expenses to

Defendants, as Plaintiffs' motion clearly was substantially justified. A party meets the "substantially justified" standard when there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the motion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Plainly, there is a "genuine dispute" concerning the discovery requests raised in Plaintiffs' motion, and "reasonable people could differ" as to appropriateness of those requests. Accordingly, Defendants' request should be denied.

### 5.    <u>Conclusion.</u>

For the foregoing reasons, as well as those articulated in Plaintiffs' Motion to Compel, Plaintiffs' Motion to Compel as to Interrogatory 2 to Johnson; Requests for Production 4, 17, 18, 30, 31, 33, and 34 to Johnson; and Requests for Production 18, 27, 29, and 35 to Repromedix should be granted. Plaintiffs further request that the Court order Defendants to pay for the fees and expenses Plaintiffs incurred in preparing their Motion to Compel, including attorney's fees.

**GENX INTERNATIONAL, INC. and
 IVFONLINE.COM, LLC**


By: /s/ Michael J. Spagnola
    Glenn A. Duhl BBO#653001
    Michael J. Spagnola
    Siegel, O'Connor, O'Donnell & Beck, P.C.
    150 Trumbull Street
    Hartford, CT 06103
    (860) 727-8900
    Fax: (860) 527-5131
    gduhl@siegeloconnor.com
    mspagnola@siegeloconnor.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2006, a copy of the foregoing Plaintiffs' Reply To Defendants' Memorandum In Opposition to Motion to Compel was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<u>/s/ Michael J. Spagnola</u>
Michael J. Spagnola

**Michael Spagnola**

| | |
|---|---|
| **From:** | Glenn Duhl [gduhl@siegeloconnor.com] |
| **Sent:** | Wednesday, March 01, 2006 6:24 PM |
| **To:** | Bauer, John R. |
| **Subject:** | Re: genX/Repromedix |

John: any word from your clients re the discovery?  Glenn.
Glenn A. Duhl, Esq. / Siegel, O'Connor, O'Donnell & Beck P.C. / (860) 280-1215 (direct) /
(203) 623-1465 (cell) / www.siegeloconnor.com.  This message is sent by a wireless device
outside the office of Siegel, O'Connor. It contains information that is confidential
and/or privileged.  If you are the intended recipient, you must maintain this message in a
secure and confidential manner.  If you are not the intended recipient, please notify the
sender immediately and destroy the entire message.  Thank you.

-----Original Message-----
From: "Bauer, John R." <jbauer@rc.com>
Date: Mon, 27 Feb 2006 11:44:37
To:"Glenn Duhl" <gduhl@siegeloconnor.com>
Cc:"Michael Spagnola" <mspagnola@siegeloconnor.com>,       "D'Alelio, Melissa M."
<mdalelio@rc.com>
Subject: RE: genX/Repromedix

Glenn:

I'm wide open today, though I'll probably grab lunch between 12:30 and 1:00.

John

-----Original Message-----
From: Glenn Duhl [mailto:gduhl@siegeloconnor.com]
Sent: Monday, February 27, 2006 11:19 AM
To: Bauer, John R.
Cc: Michael Spagnola; D'Alelio, Melissa M.
Subject: RE: genX/Repromedix


John:  What time(s) might you be able to talk today?  Thanks, Glenn.




Glenn A. Duhl, Esq.
Siegel, O'Connor, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford, CT  06103
Direct Dial:  (860) 280-1215
Main Tel:     (860) 727-8900 ext. 215
Fax:          (860) 527-5131
gduhl@siegeloconnor.com
 <http://www.siegeloconnor.com/> www.siegeloconnor.com



NOTICE:  This message contains information which is confidential and privileged.  If you
are not the intended recipient, please advise the sender, gduhl@siegeloconnor.com,
immediately by reply e-mail and delete this message with all attachments without retaining
a copy.  Thank you.


----------------

From: Bauer, John R. [mailto:jbauer@rc.com]
Sent: Monday, February 27, 2006 9:34 AM
To: Glenn Duhl
Cc: Michael Spagnola; D'Alelio, Melissa M.
Subject: RE: genX/Repromedix



Let's try this again with the correct letter!

-----Original Message-----
From: Bauer, John R.
Sent: Monday, February 27, 2006 9:27 AM
To: 'Glenn Duhl'
Cc: 'Michael Spagnola'; D'Alelio, Melissa M.
Subject: genX/Repromedix


Glenn:



Please see attached letter concerning today's discovery conference.



John



  John R. Bauer

   Robinson & Cole LLP
   One Boston Place
   Boston, MA  02108-4404
   Direct (617) 557-5936 | Fax (617) 557-5999
    <mailto:jbauer@rc.com> jbauer@rc.com |  <http://www.rc.com/> www.rc.com
    <http://www.rc.com/BioBAUER.htm> Bio |
<http://www.rc.com/documents/peopleVcard/BAUER.vcf> Contact Card

 Boston  New London  Hartford  Stamford  White Plains  New York  Sarasota

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GENX INTERNATIONAL, INC. and    )
IVFONLINE.COM, LLC              )      CIVIL ACTION NO. 05-CV-10419(DPW)
                            )
          Plaintiffs,    )
                            )
v.                           )
                            )
                            )
JEREMY JOHNSON and REPROMEDIX  )
CORP.,                    )
          Defendants.    )
                            )

## JEREMY JOHNSON'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

Defendant Jeremy Johnson ("Johnson"), by his attorneys, hereby responds as follows to

Plaintiffs'[1] First Set of Interrogatories and Requests for Production to Defendant Jeremy Johnson

(the "Interrogatories and Requests for Production").

## INTERROGATORY NO. 1

State your full name, address, date of birth, place of birth, social security number, immigration status, country of residence, marital status, and name and address of spouse.

## RESPONSE:

Johnson objects to this Interrogatory on the grounds that it seeks information which is

neither relevant to the claims or defenses of any party, nor reasonably calculated to lead to the

discovery of admissible evidence.  Subject to and without waiving these objections, Johnson

states:

---

[1] GenX International, Inc. and IVFonline.com, LLC mistakenly refer to themselves as "Defendants" in the heading of their First Set of Interrogatories and Requests for Production to Defendant Jeremy Johnson.

ALL-STATE LEGAL®  EXHIBIT  B

Jeremy Llewellyn Johnson was born on February 6, 1978 in Kitchener, Ontario, Canada.

He currently resides at 180 2nd Street, Apartment 202, Oakland, California, 94607.

## INTERROGATORY NO. 2

Since September 1, 2004, state whether you have filed any immigration petitions, and if so, identify,

- (a)    the type of petition(s) you have filed;

- (b)    the dates you filed the petition(s);

- (c)    each beneficiary under the petition(s);

- (d)    whether the petition(s) are currently pending; and

- (e)    each document upon which you relied in answering, or which in any way concerns, the information requested in this interrogatory.

## RESPONSE:

Johnson objects to this Interrogatory on the grounds that it seeks information which is neither relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 3

With respect to your employment by Repromedix Corp., state:

- (a)    the dates of such employment;

- (b)    each address at which you have been employed;

- (c)    each job title or position held;

- (d)    the dates in such position;

- (e)    the nature of the duties performed in each such position;

- (f)    the name and title of your immediate supervisor(s) in each such position;

- (g)    if you have performed any duties or have had any responsibilities for obtaining business for Repromedix Corp., identify each location, territory, district or zone for which you have any such duties or responsibilities;

2

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___2⌐|sᴛ DAY OF NOVEMBER, 2005.

_____
Jeremy Johnson

As to the Objections:

**Jeremy Johnson.**
By his attorneys,

_____
John R. Bauer, BBO # 640742
Melissa M. D'Alelio, Bar Admission Pending
**ROBINSON & COLE LLP**
One Boston Place
Boston, MA  02108-4404
(617) 557-5900

Dated: November 22, 2005

## CERTIFICATE OF SERVICE

I, Melissa M. D'Alelio, hereby certify that on November 22, 2005, I caused a copy of the foregoing to be mailed by first class mail to Plaintiffs' counsel of record.

_____
Melissa M. D'Alelio



345 Colborne St.
Tiora, Ontario N0B1S0
Canada
Cell: 519-831-6585
Email: jeremy.johnson@mail.mcgill.ca
Note: please do not fax anything to me



# Fax

| To: | Mr. Craig Sockol | From: | Jeremy Johnson |
|-----|------------------|-------|----------------|
| Fax: | (781) 937-8895 | Pages: | 3 including cover |
| Phone: | (781) 937-8893 | Date: | 12/22/2004 |
| Re: | Job Offer | CC: | |

☒ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Dear Mr. Sockol,

I am attaching my acceptance of your job offer. I understand that the position is not going to be available until February 1st, which is fine with me. Please call me at (519) 831-6585 so that we can work out the details concerning the visa. It will take 6 weeks to process it, once it is submitted to the government, so I would like to take care of this as soon as possible.

Thank you very much for the offer, and I look forward to working with you!

Sincerely,

Jeremy Johnson

EXHIBIT
C
ALL-STATE LEGAL®

JJ021

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **GENX INTERNATIONAL, INC. and IVFONLINE.COM, LLC,** : | **CIVIL ACTION NO. 05-CV-10419(DPW)** |
| : | |
| **Plaintiffs,** : | |
| **v.** : | |
| : | |
| **JEREMY JOHNSON and REPROMEDIX CORP.,** : | |
| : | |
| **Defendants.** : | **APRIL 3, 2006** |

**GENX INTERNATIONAL, INC.'S OBJECTIONS AND RESPONSES TO DEFENDANTS'**
**FIRST SET OF INTERROGATORIES TO PLAINTIFF GENX INTERNATIONAL, INC.**

**GENERAL OBJECTION TO INSTRUCTIONS**

genX international, inc. ("genX"), objects to Instruction 1 of Defendants' First Set of Interrogatories to Plaintiff genX international, inc. for the reason that the instruction seeks information protected from disclosure by the attorney-client privilege or the attorney work product doctrine.  genX also objects to Instruction 1 for the reason that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

genX objects to Instruction 3 for the reason that the instruction imposes obligations on genX in excess if those required by the Federal Rules of Civil Procedure. Rule 26(b)(5) only requires a party withholding information by claiming a privilege or work-product protection to "make the claim expressly and...describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."  genX also objects to Instruction



EXHIBIT
D

Repromedix attend the same industry meetings and trade shows. Additionally, genX, doing business as IVFonline.com, LLC, promotes and sells male infertility testing kits that compete directly with Repromedix's male infertility test services.

Further, genX, doing business as IVFonline.com, LLC, markets and promotes genetic testing services performed by Reprogenetics, a sister company, which is the same testing that Repromedix offers. If Reprogenetics successfully procures a customer for infertility testing services, genX, doing business as IVFonline.com, LLC, sells its media products to those same customers. Therefore, the success of genX's business is partially dependant on the success of its marketing and promotional efforts with respect to Reprogenetics' infertility testing services.

### INTERROGATORY NO. 7

Identify all of the GenX trade secrets that you allege Johnson and/or Repromedix misappropriated. With respect to each trade secret, identify:

(a)    The extent to which the information is known outside of GenX;

(b)    The extent to which it is known by GenX's employees and others involved n the business;

(c)    The measures taken by you to guard the secrecy of the information;

(d)    The amount of effort or money expended by you in developing the information; and

(e)    The ease or difficulty with which the information could be properly acquired or duplicated by others.

## OBJECTION

genX objects to this Interrogatory for the reason that it is vague, especially inasmuch as it uses the phrases "outside of GenX," "others involved in the business," "amount of effort or money expended by you" and "ease or difficultly with which the information could be properly acquired or duplicated by others," as well as the terms "extent" and "measures." genX also objects to this Interrogatory for the reason that it is overly broad and unduly burdensome.   genX also objects to this Interrogatory to the extent it seeks genX's confidential, proprietary and/or trade secret information.

## RESPONSE

Subject to and without waiving the foregoing objection, Johnson misappropriated: (1) Plaintiffs' customer information, including, but not limited to, information pertaining Plaintiff's leads and information pertaining to Plaintiffs' customer's purchasing habits; (2) information pertaining to Plaintiffs' marketing platforms; (3) information pertaining to various trade shows and meetings in which Plaintiffs were involved; (4) information pertaining to Plaintiffs' business strategies; and (5) Plaintiffs' sales information.

(a) The trade secrets are not known outside of genX;

(b) Only genX's key employees involved in marketing and developing its business have access to the trade secrets;

(c) As a condition of employment, genX requires all employees to execute a confidentiality non-compete agreement as well as an acknowledgement that they have read and understood genX's employee manual which includes provisions relating to confidentiality of information; genX's computers are password protected; a particular genX employee's customer contacts are

password protected in such a way so as to only allow that employee and key management personnel access to those customer contacts; genX hires an outside company to ensure the safety and integrity of information contained on its computers; genX maintains a security system to guard its premises.

(d) genX has spent multiple years and maximum effort developing these trade secrets. With respect to Plaintiffs' customer information, the cost of developing such information was $3,400,000.

(e) As to the customer information, the customer contacts and leads cannot be duplicated without substantial effort and expense the customer purchasing habits cannot be duplicated absent misappropriation. The information relating to Plaintiffs' marketing platforms, the information relating to various trade shows and meetings in which Plaintiffs were involved, the information relating to Plaintiffs' business strategies and Plaintiffs' sales information cannot be duplicated absent misappropriation.

## INTERROGATORY NO. 8

State the legal relationship between GenX and IVFonline, specifying which of the two companies employed Johnson and paid his salary.

### OBJECTION

genX objects to this Interrogatory for the reason that it is vague, especially inasmuch as it uses the phrase "legal relationship." genX also objects to this Interrogatory for the reason that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

13

## PLAINTIFF'S CERTIFICATION

In accordance with 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing answers to interrogatories are true and accurate to the best of my knowledge and belief.

Executed on April 3, 2006.

Michael Cecchi,
Chief Executive Officer

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| GENX INTERNATIONAL, INC. and IVFONLINE.COM, LLC, | : | CIVIL ACTION NO. 05-CV-10419(DPW) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| JEREMY JOHNSON and REPROMEDIX CORP., | : | |
| | : | |
| Defendants. | : | APRIL 3, 2006 |

**PLAINTIFF IVFONLINE.COM, LLC'S OBJECTIONS AND RESPONSES TO**
**DEFENDANTS' FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF IVFONLINE.COM, LLC**

**GENERAL OBJECTION TO INSTRUCTIONS**

Plaintiff, IVFonline.com, LLC ("IVFonline.com"), objects to Instruction 1 of Defendants' First Set of Interrogatories to Plaintiff IVFonline.com, LLC for the reason that the instruction seeks information protected from disclosure by the attorney-client privilege or the attorney work product doctrine. IVFonline.com also objects to Instruction 1 for the reason that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

IVFonline.com objects to Instruction 3 for the reason that the instruction imposes obligations on IVFonline.com in excess if those required by the Federal Rules of Civil Procedure. Rule 26(b)(5) only requires a party withholding information by claiming a privilege or work-product protection to "make the claim expressly and...describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." IVFonline.com also

EXHIBIT

E

ALL-STATE LEGAL®

## OBJECTION

IVFonline.com objects to this Interrogatory for the reason that it is vague and overly broad, especially inasmuch as it uses the phrases "complete factual basis" and "identify all competing products." IVFonline.com also objects to this Interrogatory to the extent it seeks IVFonline.com's confidential, proprietary and/or trade secret information.

## RESPONSE

Subject to and without waiving the foregoing objection, IVFonline.com and Repromedix offer the same or similar products or services to precisely the same customer base. IVFonline.com and Repromedix market and sell to the same customer base, consisting of 350 fertility clinics in the United States and 1500 fertility clinics worldwide. Further, IVFonline.com and Repromedix attend the same industry meetings and trade shows.

Additionally, IVFonline.com promotes and sells male infertility testing kits that compete directly with Repromedix's male infertility test services. Further, IVFonline.com markets and promotes genetic testing services performed by Reprogenetics, a sister company, which is the same testing that Repromedix offers. If Reprogenetics successfully procures a customer for infertility testing services, IVFonline.com sells its media products to those same customers. Therefore, the success of IVFonline.com's business is partially dependant on the success of its marketing and promotional efforts with respect to Reprogenetics' infertility testing services.

## INTERROGATORY NO. 6

Identify all of the IVFonline trade secrets that you allege Johnson and/or Repromedix misappriated. With respect to each trade secret, identify:

(a)    The extent to which the information is known outside of IVFonline;

(b)    The extent to which it is known by IVFonline's employees and others involved in the business;

(c)    The measures taken by you to guard the secrecy of the information;

(d)    The amount of effort or money expended by you in developing the information; and

(e)    The ease or difficulty with which the information could be properly acquired or duplicated by others.

**OBJECTION**

IVFonline.com objects to this Interrogatory for the reason that it is vague, especially inasmuch as it uses the phrases "outside of IVFonline," "others involved in the business," "amount of effort or money expended by you" and "ease or difficultly," as well as the terms "extent" and "measures."  IVFonline.com also objects to this Interrogatory for the reason that it is overly broad and unduly burdensome.  IVFonline.com also objects to this Interrogatory to the extent it seeks IVFonline.com's confidential, proprietary and/or trade secret information.

**RESPONSE**

Subject to and without waiving the foregoing objection, Johnson misappropriated: (1) Plaintiffs' customer information, including, but not limited to, information pertaining to Plaintiff's leads and information pertaining to Plaintiffs' customers' purchasing habits; (2) information pertaining to Plaintiffs' marketing platforms; (3) information pertaining to various trade shows and meetings in which Plaintiffs' were involved; (4) information pertaining to Plaintiffs' business strategies; and (5) Plaintiffs' sales information.

(a) The trade secrets are not known outside of IVFonline.com;

(b) Only IVFonline.com's key employees involved in marketing and developing its business have access to the trade secrets;

(c) As a condition of employment, IVFonline.com requires all employees to execute a confidentiality non-compete agreement as well as an acknowledgement that they have read and understood IVFonline.com's employee manual which includes provisions relating to confidentiality of information; IVFonline.com's computers are password protected; a particular IVFonline.com employee's customer contacts are password protected in such a way so as to only allow that employee and key management personnel access to those customer contacts; IVFonline.com hires an outside company to ensure the safety and integrity of information contained on its computers; IVFonline.com maintains an ADT security system to guard its premises.

(d) IVFonline.com has spent multiple years and maximum effort developing these trade secrets. With respect to Plaintiffs' customer information, the cost of developing such information was $3,400,000.

(e) As to the customer information, the customer contacts and leads cannot be duplicated without substantial effort and the customer purchasing habits cannot be duplicated absent misappropriation. Plaintiffs' marketing platforms, information relating to various trade shows and meetings in which Plaintiffs' were involved, the Plaintiffs' business strategies and Plaintiffs' sales information cannot be duplicated absent misappropriation.

## PLAINTIFF'S CERTIFICATION

In accordance with 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing answers to interrogatories are true and accurate to the best of my knowledge and belief.

Executed on April 3, 2006.

Michael Cecchi,
Chief Executive Officer

Westlaw.

Not Reported in F.Supp.                                                                Page 1

Not Reported in F.Supp., 1996 WL 121730 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
  United States District Court, D. Massachusetts.
  David D. DUNCAN, Sr., Walter J. Patterson,
  Robert M. Sullivan and Charles V. Degeorge, as
  they are Trustees of the Teamsters Health Services
  and Insurance Plan of Local 404, Plaintiffs,
                          v.
  Robert M. SANTANIELLO, Jay A. Posnik, and
  Savino J. Basile, individually and as they are
  partners d/b/a Santaniello, Posnik, Basile and
  Rideout, and Edward J. Partyka, Defendants
                          v.
  David D. DUNCAN, Sr.; Michael J. Catanzaro;
  Robert M. Sullivan; Charles V. Degeorge,
  individually, Third-Party Defendants
            **Civ. A. No. 94-30224-MAP.**

                   March 8, 1996.

*MEMORANDUM AND ORDER WITH REGARD
TO DEFENDANTS EDWARD PARTYKA, SAVINO
J. BASILE AND JAY A. POSNIK'S MOTION FOR
PROTECTIVE ORDER (DOCKET NO. 31)*
NEIMAN, United States Magistrate Judge.
**\*1** Pursuant to Fed.R.Civ.P. 26(c), Defendants
Edward Partyka, Savino J. Basile and Jay A. Posnik
(hereinafter "Defendants") seek an order protecting
them from responding to certain requests for
admissions propounded by Plaintiff Trustees of the
Teamsters Health Services and Insurance Plan of
Local 404 ("Plaintiff"). Defendants claim that the
requests are excessive, unduly burdensome,
unnecessary and duplicative and assert that most, if
not all, of the requests were discussed during the
depositions of the Defendants in November of 1995
and January of 1996. In addition, Defendants assert
that Plaintiff has made no attempt to appropriately
tailor the request for admissions to the facts that are
or may be in genuine dispute and that, in large part,
the request for admissions mirror the deposition
transcripts. For the reasons explained below,

Defendant's motion is denied.

Rule 36 states, in relevant part:
A party may serve upon any other party a written
request for the admission, for purposes of the
pending action only, of the truth of any matters
within the scope of Rule 26(b)(1) set forth in the
request that relate to statements or opinion of fact or
the application of law to fact, including the
genuineness of any documents described in the
request.

Fed.R.Civ.P. 36(a). With reference to the rule,
Plaintiff asserts that the admissions served on
Defendants here comport with "the purpose of
expediting the trial and to relieve the parties of the
burdens and expense of proving at trial facts which
are undisputed." *Kershner v. Beloit Corp.,* 106
F.R.D. 498, 499 (D. Me. 1985). See also *Berry v.
Federated Mut. Ins. Co.,* 110 F.R.D. 441, 443 (N.D.
Ind. 1986) ("The purpose of Rule 36 is to expedite
the trial by determining what issues are in genuine
dispute and by resolving the issues which are not
disputed."). Consequently, Plaintiff argues, Rule
36(a) "is to be liberally construed in its application."
*Kershner,* 108 F.R.D. at 499 (citing *Walsh v.
Connecticut Mut. Life Ins. Co. of Hartford, Conn.,*
26 F.Supp. 566 (E.D. N.Y. 1939). Plaintiff,
however, does not specifically explain how the
admissions sought in this case would actually
expedite the trial.

On the other hand, Defendants rely on conclusory
assertions that the requested admissions are
unreasonably burdensome, duplicative, harassing
and unnecessary. Defendants, however, refer only to
two admissions, numbers 30 and 31 propounded to
Defendant Partyka, as duplicative of the answers he
provided in his deposition. See Defendants'
Memorandum of Law at 3 n.2. While it is true, as
Defendants assert, that "[a] party who desires to
discover what the facts are ... should resort to other
discovery rules rather than Rule 36," 8 C. Wright
and A. Miller, Federal Practice and Procedure §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                                      Page 2

Not Reported in F.Supp., 1996 WL 121730 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

2252 at 524-525 (1994), it is equally true that "a party need not elect between Rule 36 and the other rules and he may use the various devices at the same time," id. Indeed, it appears to the Court that the requests for admissions in the present matter are specifically designed to elevate Defendants' deposition answers from evidence to fact. Thus, contrary to Defendants' assertion, Plaintiff does not appear to be utilizing Rule 36(a), in order to discover the facts; rather, as noted by Defendants themselves, Plaintiff is seeking to have Defendants admit such undisputed facts as have been previously revealed through discovery.

**\*2** Moreover, "[i]t is clear that discovery may not be avoided merely because it may involve 'inconvenience and expense.'" *Wigler v. Electronic Data Systems Corp.,* 108 F.R.D. 204, 205 (D. Md. 1985) (quoting *Isaac v. Shell Oil Co.,* 83 F.R.D. 428, 431 (E.D. Mich. 1979)). The only issue is whether justice requires that an order be issued "to protect a party or person from ... oppression, or undue burden or expense ...." Fed.R.Civ.P. 26(c). That evaluation must necessarily be made on a case-by-case basis and is underscored by the 1983 Advisory Committee Notes to Fed.R.Civ.P. 26(b). *Wigler,* 108 F.R.D. at 205, That analysis envisions consideration of whether the discovery
is disproportionate to the individual lawsuit as measured by such matters as its nature and complexity, the importance of the issues at stake in a case seeking damages, the limitations on a financially weak litigant to withstand extensive opposition to a discovery program or to respond to discovery requests, and the significance of the substantive issues, as measured in philosophic, social, or institutional terms .... The court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent.

Fed.R.Civ.P. 26(b) advisory committee's note.

In making that analysis here, the Court will first accept Plaintiff's representations that the parties -- appearing before District Judge Michael A. Ponsor on January 30, 1995 for a scheduling conference -- acknowledged that this action presents many

complex legal issues with regard to the scope of an attorney's liability to an ERISA-governed plan for alleged breaches of duty to that plan. See also *Duncan v. Santaniello,* 900 F. Supp. 547 (D. Mass. 1995). Judge Ponsor memorialized this sentiment in his February 1, 1995 Scheduling Order, stating that the "unusually long allowance" of non-expert discovery "is based upon the special circumstances of this case and the unusual demands upon counsel."

The Court, however, has not been presented with any information respecting the Defendants' financial limitations or the significance of the substantive issues. Nor does the Court have before it any specific objections to particular requests for admission, since the Defendants sought a protective order prior to responding to any particular request. In fact, Defendants, at least at this time, make no claim that the admissions sought are irrelevant. Indeed, to the extent that Defendants assert that the admissions sought are largely undisputed, the use of the request for admissions to "conclusively establish " such facts as are not disputed is precisely the reason Rule 36 was adopted. If Plaintiff is simply seeking admissions with respect to "statements or opinions of fact or the application of law to fact" set forth in Defendants' depositions, Defendants' responses should be relatively easy. On the other hand, Defendants may, of course, respond to the requests for specific admissions by stating any objections in accord with Rule 36(a).

**\*3** Finally, the sheer number of admissions sought is insufficient, at this time, to convince the Court to issue a protective order. Plaintiff served a total of 292 admissions upon three separate defendants. Whether or not the Court counts the sub-parts to raise the total number of requests to 322, as Defendants urge, the total number is still far from the 1,164 admissions sought in *Wigler, supra,* or the 2,028 admissions sought in *Misco, Inc. v. U.S. Steel Corp.,* 784 F.2d 198 (6th Cir. 1986). On the other hand, should the Defendants object to any particular requests, the Court may also consider limiting the number of requests pursuant to Rule 26(b)(2).

Accordingly, Defendants' motion for a protective order is DENIED. Defendants shall have an additional thirty days from the date hereof to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 3

Not Reported in F.Supp., 1996 WL 121730 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

respond to Plaintiff's requests, if they so wish.

IT IS SO ORDERED.

D.Mass.,1996.
Duncan v. Santaniello v. Duncan
Not Reported in F.Supp., 1996 WL 121730
(D.Mass.)

Briefs and Other Related Documents (Back to top)

• 3:94cv30224 (Docket) (Oct. 06, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Jeremy Johnson 4-19-2006
GENX International, Inc., and Ivfonline.com, LLC v. Jeremy Johnson and Repromedix Corp.

1

1                     UNITED STATES DISTRICT COURT

2                       DISTRICT OF MASSACHUSETTS

3

4        -------------------------------x

5        GENX INTERNATIONAL, INC., and

6        IVFONLINE.COM, LLC,

7                          Plaintiff

8                                             Civil Action

9        vs.                        No. 05-CV-10419(DPW)

10

11       JEREMY JOHNSON and

12       REPROMEDIX CORP.,

13                          Defendant

14       -------------------------------x

15

16                  DEPOSITION OF JEREMY JOHNSON, a

17            witness called by and on behalf of the

18            Plaintiff, taken pursuant to the Federal Rules

19            of Civil Procedure, before Nicole E. Guilbert,

20            a Notary Public in and for the Commonwealth of

21            Massachusetts, at O'Brien & Levine, 195 State

22            Street, Boston, Massachusetts, on Wednesday,

23            April 19, 2006, commencing at 10:05 a.m.

24

EXHIBIT
G

Jeremy Johnson 4-19-2006
GENX International, Inc., and Ivfonline.com, LLC v. Jeremy Johnson and Repromedix Corp.

1    as well as any files that were on there as well relating to

2    that business.

3        Q.    When did you do that?

4        A.    Immediately upon giving my resignation.

5        Q.    All right.  And you have that laptop still,

6    correct?

7        A.    I have it but it's not in a working state right

8    now unfortunately.

9        Q.    And can you tell me why it's not in a working

10   state right now?

11       A.    Yes.  I don't know why but it -- actually, at this

12   point, the power source won't work correctly.  So I don't

13   know if it's the power cord or if it's the -- something

14   internal.  But currently it's not working.

15       Q.    Are you aware that, in this litigation, a request

16   has been made to inspect that hard drive?

17       A.    Yes.  I was aware that there was a request made

18   but I was informed that I would not --

19            MR. BAUER:  Let me --

20       Q.    (By Mr. Duhl)  Don't tell me what your attorney

21   has told you.

22       A.    I did see a request for the laptop.

23       Q.    Okay.  And to the extent necessary, you are

24   preserving the condition of that laptop, correct?  You're

Jeremy Johnson 4-19-2006
GENX International, Inc., and Ivfonline.com, LLC v. Jeremy Johnson and Repromedix Corp.

150

```
 1    COMMONWEALTH OF MASSACHUSETTS                    MIDDLESEX, SS.
 2
 3              I, NICOLE E. GUILBERT, a Certified
       Shorthand Reporter and Notary Public duly
 4     commissioned and qualified in and for the
       Commonwealth of Massachusetts, do hereby
 5     certify that there came before me on the 19th
       day of April 2006, at 10:05 a.m., the person
 6     hereinbefore named, JEREMY JOHNSON, who
       provided satisfactory evidence of
 7     identification as prescribed by Executive
       Order 455 (03-13) issued by the Governor of
 8     the Commonwealth of Massachusetts, was by me
       duly sworn to testify to the truth and nothing
 9     but the truth of his knowledge concerning the
       matters in controversy in this cause; that he
10     was thereupon examined upon his oath, and his
       examination reduced to typewriting under my
11     direction; and that this is a true record of
       the testimony given by the witness to the best
12     of my ability.
                I further certify that I am neither
13     attorney or counsel for, nor related to or
       employed by, any of the parties to the action
14     in which this deposition is taken, and
       further, that I am not a relative or employee
15     of any attorney or counsel employed by the
       parties hereto or financially interested in
16     the action.
17
18     My Commission Expires:  May 7, 2010
19
20
21
22                        Nicole E. Guilbert
                          CSR/Notary Public
23
24
```

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GENX INTERNATIONAL, INC. and IVFONLINE.COM, LLC, | : CIVIL ACTION NO. 05-CV-10419(DPW) : Discovery Referred to (MBB) |
| **Plaintiffs,** v. | |
| JEREMY JOHNSON and REPROMEDIX CORP., | |
| **Defendants.** | : MAY 8, 2006 |

### AFFIDAVIT OF MONICA MEZEZI

I, Monica Mezezi, do hereby depose and say:

1.      I am the President of Plaintiff IVFonline.com, LLC ("IVFonline").

2.      In my capacity as President of IVFonline, I am familiar with the manner in which Defendant Jeremy Johnson ("Johnson") performed his duties and responsibilities as a salesperson for genX international, inc. and IVFonline (collectively referred to herein as "genX").

3.      In the course of performing his duties as genX's employee, Johnson used a lap top computer which he personally owned.

4.      Johnson's lap top computer was one of his primary workstations in genX's Guelph, Ontario office and his primary workstation when he traveled on business.

5.      Johnson's lap top computer was able to connect to genX's computer infrastructure through wireless networking and the internet.

6.      During his employment with genX, Johnson accessed genX's computer infrastructure through his lap top computer.



7.   Johnson maintained genX's customer contact information on his lap top computer during his employment with genX, and may currently maintain genX's customer contact information on his lap top computer.

8.   Due to the nature of his responsibilities as a genX salesperson, Johnson likely maintained other genX confidential, proprietary and trade secret information on his lap top computer during his employment with genX, and may currently maintain genX's confidential, proprietary and trade secret information on his lap top computer.

9.   Johnson retained his lap top computer after leaving genX's employment.

In accordance with 28 U.S.C. § 1746, I certify under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on May ___, 2006.

Monica Mezezi

2