# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
:
**GENX INTERNATIONAL, INC. and**   : **CIVIL ACTION NO. 05-CV-10419(DPW)**
**IVFONLINE.COM, LLC,**            :
                                    :
    **Plaintiffs,**            :
**v.**                              :
                                    :
**JEREMY JOHNSON and**             :
**REPROMEDIX CORP.,**              :
                                    :
   **Defendants.**            : **JUNE 29, 2006**

## MEMORANDUM OF LAW IN SUPPORT OF SECOND MOTION TO COMPEL

Plaintiffs, genX international, inc. and IVFonline.com, LLC (collectively referred to herein as "Plaintiffs") move this Court for an order compelling Defendant Jeremy Johnson ("Johnson") to fully and fairly comply with Request 34 of Defendants' First Set of Interrogatories and Request for Production to Defendant Johnson, dated and served September 21, 2005, to which Johnson has objected and failed to comply.  Attempts to resolve this discovery dispute without the Court's intervention have failed.

## I.     Nature of the Case

genX international, inc. is in the business of developing and manufacturing new and advanced laboratory technologies and products for infertility, assisted reproduction, cell biology and other medical applications.  IVFonline.com, LLC is in the business of marketing and selling products for infertility, assisted reproduction, cell biology and other medical applications.  Defendant Repromedix Corp. ('Repromedix") is in the business of designing laboratory reproductive testing and finding solutions to infertility problems.  Plaintiffs and Repromedix conduct similar businesses, manufacture and sell

competing products and vie for similar clients, customers and market shares in the human assisted reproduction and infertility industry.

On or about October 19, 2001, Plaintiffs hired Johnson to fill the position of sales representative. In consideration of his continued employment, Johnson executed a Confidentiality Non-Compete Agreement ("Agreement") in Plaintiffs' favor. The Agreement contains multiple employment-related restrictive covenants.

During his employment with Plaintiffs, Johnson had access and became privy to Plaintiffs' confidential, proprietary and trade secret information, including, *inter alia*, trademarks, formulas, research and product development compilations, processes, product lists, customer lists, and compilations of customer purchasing habits. Near the end of his employment, Johnson engaged in conduct which led Plaintiffs to believe that he had misappropriated Plaintiffs' confidential, proprietary and trade secret information.

On January 24, 2005, Johnson tendered a resignation letter, effective the following day. The resignation letter stated that Johnson had accepted a position with Repromedix.

Plaintiffs commenced this action on March 3, 2005, asserting multiple claims against Defendants. Specifically, Plaintiffs assert claims against Johnson for: (1) breach of contract (First Cause of Action); (2) breach of the duty of the loyalty (Second Cause of Action); (3) misappropriation of trade secrets (Fifth Cause of Action); (4) computer conversion (Eighth Cause of Action); and (5) Unfair Trade Practices (Eleventh Cause of Action). Plaintiffs assert claims against Repromedix for: (1) tortious interference with contractual relations (Third Cause of Action); (2) misappropriation of trade secrets (Sixth Cause of Action); (3) aiding and abetting (Tenth Cause of Action);

and (4) unfair trade practices (Twelfth Cause of Action). Plaintiffs assert claims against both Johnson and Repromedix for: (1) tortious interference with business relations (Fourth Cause of Action); (2) willful and malicious misappropriation of trade secrets (Seventh Cause of Action); and (3) civil conspiracy (Ninth Cause of Action).

## II.    **Procedural History**

On September 21, 2005, Plaintiffs served Johnson with a set of interrogatories and requests for production. Plaintiffs propounded 13 interrogatories and 38 requests for production, all of which Johnson objected to.

After months of negotiation concerning Johnson's objections, Plaintiffs were finally forced to file a motion to compel on March 21, 2006 concerning several of their discovery requests. On April 11, 2006, Defendants filed a memorandum in opposition to Plaintiffs' motion. On May 8, 2006, Plaintiffs filed a reply to Defendants' memorandum in opposition.

The Court referred Plaintiffs' motion to Magistrate Judge Bowler for disposition. On May 11, 2006, Judge Bowler heard oral argument. Following oral argument on each discovery request in question, Judge Bowler issued a ruling from the bench. Judge Bowler granted Plaintiffs' motion in part and denied it in part. However, Judge Bowler also denied portions of Plaintiffs' motion "without prejudice." Specifically, Judge Bowler denied Plaintiffs' motion with respect to Request 34 to Johnson without prejudice, noting that she would re-entertain Plaintiffs' motion if Plaintiffs could produce evidence such as an affidavit suggesting that Johnson had their information on his laptop computer.

Plaintiffs decided that in light of Judge Bowler's "without prejudice" ruling on their motion to compel concerning Request 34 to Johnson, they would submit an affidavit

from an expert retained to provide testimony at trial affirming that based on a computer forensic analysis performed on the desktop computer Johnson used while employed by Plaintiffs, it is highly likely that Johnson transferred Plaintiffs' confidential, proprietary and/or trade secret information to his laptop computer and maintained that information on his laptop computer after leaving Plaintiffs' employment.  *See* Affidavit of James Ruddock (Exhibit A).

### III.    The Parties' Negotiations and Discovery Conference

On June 9, 2006, Plaintiffs' counsel sent a letter to Defendants' counsel describing the facts outlined above and requesting that Defendants voluntarily produce Johnson's laptop computer for inspection.  *See* Exhibit B.  On June 15, 2006, counsel for the parties engaged in a Local Rule 37.1 conference.  The conference lasted approximately 45 minutes.  The parties discussed the new evidence that Plaintiffs would put forward concerning Request 34 to Johnson and attempted to negotiate a mutually agreeable resolution.  Unfortunately, the parties were unable to reach an accord, resulting in the instant motion to compel.

### IV.    The Discovery Matters Raising Issues to Be Decided By This Court

**a.    The discovery request at issue.**

REQUEST FOR PRODUCTION NO. 34: (TO JOHNSON)
Any lap top computers, PDAs, and/or cellular telephones in your possession.[1]

RESPONSE:
Johnson objects to this Request on the grounds that it is unduly burdensome. Johnson further objects to this Request on the grounds that it seeks information which is neither relevant to the claims or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Johnson further objects to this Request on the grounds that it seeks the production of documents containing Repromedix's confidential and proprietary business information.

---

[1] Prior negotiations surrounding this request have limited the request to the laptop computer Johnson used while employed by Plaintiffs.

V.   **Argument**

    a.   <u>Judge Bowler's ruling on the request at issue was "without prejudice."</u>

As noted earlier, Judge Bowler's bench ruling on Plaintiffs' motion to compel production of Johnson's laptop computer for inspection was without prejudice.  Indeed, the parties have so stipulated.  *See* e-mail from M. Spagnola to M. D'Alelio dated May 12, 2006 (Exhibit C) and e-mail from M. D'Alelio to M. Spagnola dated May 15, 2006 (Exhibit D).

Judge Bowler indicated that if Plaintiffs could produce evidence such as an affidavit suggesting that Johnson had their information on his laptop computer, she would re-entertain Plaintiffs' motion on that request.  Therefore, Plaintiffs are entitled to bring a new motion to compel with respect to this request.

    b.   Plaintiffs have produced evidence suggesting that Johnson's laptop computer contains their confidential, proprietary and trade secret <u>information.</u>

Plaintiffs have retained James Ruddock as an expert for trial of this matter.  *See* Affidavit of James Ruddock at ¶ 1.  Mr. Ruddock has more than 20 years of experience in the analysis of computer systems and operator usage patterns.  *Id.* at ¶ 2.  Mr. Ruddock has extensive experience in analyzing normal and abnormal operator usage through examining hardware and software access patterns using operating system/application functions and specialized forensic analysis tools.  *Id.* at ¶ 3.

Mr. Ruddock was retained to, among other things, identify any computer forensic evidence which indicates that Johnson removed and/or transferred confidential, proprietary or trade secret information from Plaintiffs' computer system(s).  *Id.* at ¶ 4.

Mr. Ruddock conducted a forensic computer analysis of the desktop computer that Johnson used during his employment with Plaintiffs.  *Id.* at ¶ 5.

In order to conduct the analysis, the physical computer was sent directly to a third-party forensic analysis company called Forensic Data Recovery.  *Id.* at ¶ 6. Forensic Data Recovery created a "bit-stream image" of the computer's hard drive using EnCase technology.  *Id.* at ¶ 7.  A "bit-stream image" is an exact copy of every sector of a computer's source drive, whether or not it contains active data.  *Id.* at ¶ 8.  In addition to the "bit-stream image," Mr. Ruddock also requested that Forensic Data Recovery provide the following diagnostic information: (a) Hardware configuration information; (b) Full drive/folder/file structure including modified, create, access and deletion dates; (c) Listings of all deleted files and folders; (d) Print log contents; (e) Extracted e-mails; and (f) E-mails, contacts and e-mail configurations, as well as other Microsoft Outlook information.  *Id.* at ¶ 9.

Mr. Ruddock conducted an analysis of the EnCase "bit stream image" provided by Forensic Data Recovery.  *Id.* at ¶ 10.  Mr. Ruddock used numerous software tools to conduct the analysis, including Mount Image Pro (version 1.05), Recover My Files (version 3.3.0.2872), Recover My Email for Outlook (version 2.0.3.9), Recover My Email for Outlook Express (version 1.0), and Explorer View (version 2.2), as well as native Microsoft Windows XP search and analysis tools.  *Id.* at ¶ 11.

Mr. Ruddock conducted three different types of analyses: (a) The recovery and examination of the unallocated clusters on the drive in order to analyze deleted and otherwise inaccessible files; (b) The examination of all currently accessible files on the system; and (c) The extraction and examination of all e-mails and address book entries,

both current and deleted. *Id.* at ¶ 12. In order to analyze the unallocated sectors of the hard drive, Mr. Ruddock mounted the bit stream image as a single drive using Mount Image Pro. *Id.* at ¶ 13. Mr. Ruddock then used the "Recover My Files" program to identify deleted files. *Id.* at ¶ 14. Mr. Ruddock recovered over 629,000 deleted files using this method. *Id.*

Mr. Ruddock then searched the recovered files based on dates and content. *Id.* at ¶ 15. Among other files, Mr. Ruddock examined all files with create, modify, access, print or delete dates from January 1, 2005 through January 24, 2005 (inclusive). *Id.* at ¶ 16. Johnson's last day of work with Plaintiffs was January 24, 2005. *See* Affidavit of Monica Mezezi (Exhibit E) at ¶ 20.

Mr. Ruddock's analysis revealed that on January 7, 2005, Microsoft Excel files containing name and address information for over a hundred customers were accessed and modified. Ruddock Aff. at ¶ 17. These files are comprehensive compilations of customer and prospective customer information belonging to Plaintiffs. Mezezi Aff. at ¶ 5.

Mr. Ruddock's analysis revealed that on January 24, 2005, a Microsoft Excel file containing name, email and telephone information for thirty-three (33) customers was created and deleted from the computer. *Id.* at ¶ 18. This file is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs. Mezezi Aff. at ¶ 6.

Mr. Ruddock's analysis revealed that files containing hundreds of entries of detailed invoice information including customer, product and price were recovered, all of which date to January 19, 2005 and January 20, 2005. Ruddock Aff. at ¶ 19. These

files are comprehensive compilations of customer and prospective customer information belonging to Plaintiffs.  Mezezi Aff. at ¶ 12.

Mr. Ruddock's analysis revealed that during the month of January, 2005, there were numerous other accesses to customer information files, such as a Coda Standing Order List, and a Global Sampling list.  Ruddock Aff. at ¶ 20.  These files are comprehensive compilations of customer and prospective customer information belonging to Plaintiffs.  Mezezi Aff. at ¶¶ 7, 8.

Mr. Ruddock also analyzed all current files present on the hard drive.  Ruddock Aff. at ¶ 21.  In order to analyze all current files present on the hard drive, Mr. Ruddock mounted the Encase image as a logical drive using Mount Image Pro.  *Id.* at ¶ 22. Mr. Ruddock then searched all files based on dates and content in order to identify significant data.  *Id.* at ¶ 23.  Among other files, Mr. Ruddock examined all files with create, modify, access, print or delete dates from January 1, 2005 through January 24, 2005 (inclusive).  *Id.* at ¶ 24.  Mr. Ruddock also examined all system logs, including print logs, recent documents and cached internet files.  *Id.* at ¶ 25.

Mr. Ruddock's analysis revealed that on January 21, 2005, Plaintiffs' "Corporate Leads" directory was accessed.  Ruddock Aff. at ¶ 26.  Plaintiffs' "Corporate Leads" directory is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs.  Mezezi Aff. at ¶ 13.

Mr. Ruddock's analysis revealed that on January 24, 2005, numerous Microsoft Excel spreadsheets were accessed related to sales performance, including "jj 4th qrt 04 vs 4th qrt 03.xls," "Sales 4th Q 03.xls" and "Sales 4th Q 04.xls."  Ruddock Aff. at ¶ 27

These files contain sales, pricing, product and customer data belonging to Plaintiffs. Mezezi Aff. at ¶ 9.

Mr. Ruddock's analysis revealed that on January 24, 2005, various files related to a magazine mass mailing, including "Magazine Mass Mailing 2.xls," which was created on January 7, 2005, modified on January 21, 2005, and accessed on January 24, 2005, were also accessed. Ruddock Aff. at ¶ 28. This file is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs. Mezezi Aff. at ¶ 10.

Mr. Ruddock's analysis revealed that a file – "Global Leads January 2005.xls" was accessed during the week of January 17, 2005. Ruddock Aff. at ¶ 30. This file is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs. Mezezi Aff. at ¶ 11.

Mr. Ruddock's analysis revealed that that in total, twenty-one shortcuts in the Recent Files listing indicate a last access date and time of January 24, 2005 at 5:04 p.m. These files and file folders are:

a.  Sales 4th Q 04.xls

b.  Sales 4th Q 03.xls

c.  Magazine Mass Mailing2.xls

d.  Leads

e.  jj 4th qrt 04 v. 4th qrt 03.xls

f.  jj 4th qrt 03.xls

g.  Customers to Receive Magazine.xls

h.  Customers for Subscription.xls

      i.        Copy of jj 4th qrt vs 4th qrt 03-revised.xls

      j.        4th Q 2004

Ruddock Aff. at ¶ 29.  According to Mr. Ruddock, it is possible that these entries indicate that all of these files and file folders were copied or transferred at 5:04 p.m. on January 24, 2005.  *Id.*

As part of his analysis, Mr. Ruddock also examined all interaction between Johnson's computer and Plaintiffs' internet-based ordering system by examining cached web pages.  Ruddock Aff. at ¶ 31.  Mr. Ruddock's analysis of the cached web pages revealed a substantial usage of Plaintiffs' ordering system, including views of customer, product, pricing and order information.  *Id.*  at ¶ 32.  Mr. Ruddock's analysis revealed that in total, 133 accesses were made to customer information between January 5, 2005 and January 24, 2005.  *Id.*  Plaintiffs' internet-based ordering system is a comprehensive compilation of customer and prospective customer information, views of Plaintiffs' customers and prospective customers, and product, pricing and order information, all belonging to Plaintiffs.  Mezezi Aff. at ¶ 14.

Plaintiffs have expended tremendous amounts of effort and incurred significant expense in compiling all of the information described above.  *Id.* at ¶ 15.  The information is not known outside of Plaintiffs' business.  *Id.* at ¶ 16.  Only Plaintiffs' key employees involved in marketing and developing their business have access to the information.  *Id.* at ¶ 17.

To guard the secrecy of the information, Plaintiffs: (a) require  all  employees  to execute a confidentiality non-compete agreement as well as an acknowledgement that they have read and understood an employee manual which includes provisions relating

to confidentiality of information; (b) Plaintiffs' computers are password protected; (c) a particular employee's customer contacts are password protected in such a way so as to only allow that employee and key management personnel access to those customer contacts; (d) Plaintiffs hire an outside company to ensure the safety and integrity of information contained on their computers; and (e) Plaintiffs maintain a security system to guard their premises. *Id.* at ¶ 18. Further, the information cannot be duplicated without substantial effort and expense and/or misappropriation. *Id.* at ¶ 19.

Johnson accepted an offer of employment from Repromedix on December 20, 2004. *See* December 15, 2004 letter to Jeremy Johnson from Doug Cunningham (Exhibit F). Further, Johnson has conceded that he maintained Plaintiffs' confidential, proprietary and trade secret information on his laptop during his employment with Plaintiffs. This, in conjunction with the floury of accesses to and potential transfers of Plaintiffs' information from Johnson's desktop computer during the last month, week and day of Johnson's employment with Plaintiffs, strongly suggests that Johnson transferred Plaintiffs' confidential, proprietary and trade secret information to an external source immediately prior to leaving Plaintiffs' employment.

According to Mr. Ruddock, a laptop computer is normally used for all purposes while out of the office and to store key information which may be needed, both at the office and elsewhere. Ruddock Aff. at ¶ 33. According to Mr. Ruddock, the laptop is used for functions that require continuity over time. *Id.* This ensures that key information is available while traveling. *Id.* According to Mr. Ruddock, information that is important to the user is stored on the laptop since it is available both at the office and while traveling. *Id.* According to Mr. Ruddock, the combination of typical usage

patterns and Johnson's usage of his desktop computer indicate that if Johnson desired to transfer Plaintiffs' information from his desktop computer, such information would have been transferred to his laptop computer.  *Id.* at 34.

Based on the foregoing, there is compelling circumstantial evidence that Johnson transferred Plaintiffs' confidential, proprietary and trade secret information to his laptop computer during the last days of his employment with Plaintiffs and maintained that information on his laptop computer after he left Plaintiffs' employment.  *Id.* at ¶ 35. Indeed, based on the foregoing, there is compelling circumstantial evidence that Johnson currently maintains that information on his laptop computer.

Mr. Ruddock's affidavit, read in conjunction with Ms. Mezezi's affidavit, is precisely the evidence that Judge Bowler indicated would warrant her re-entertaining Plaintiffs' motion to compel as to Request 34 to Johnson.  Accordingly, the Court should grant Plaintiffs' Second Motion to Compel as to Request 34 to Johnson, and order Johnson's laptop to be produced for inspection.

## VI.   **Conclusion**

Judge Bowler's previous ruling on the discovery request that is the subject of this motion was "without prejudice."   Plaintiffs have produced evidence warranting the Court's re-entertaining Plaintiffs' motion as to the request and granting the request. Therefore, Plaintiffs' Second Motion to Compel should be granted.

**GENX INTERNATIONAL, INC. and
IVFONLINE.COM, LLC**

By: /s/ Michael J. Spagnola
    Glenn A. Duhl BBO#653001
    Michael J. Spagnola
    Siegel, O'Connor, O'Donnell & Beck, P.C.
    150 Trumbull Street
    Hartford, CT 06103
    (860) 727-8900
    Fax: (860) 527-5131
    gduhl@siegeloconnor.com
    mspagnola@siegeloconnor.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2006, a copy of the foregoing Memorandum of Law in Support of Second Motion to Compel was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

    /s/ Michael J. Spagnola
    Michael J. Spagnola

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **GENX INTERNATIONAL, INC. and IVFONLINE.COM, LLC,** | : **CIVIL ACTION NO. 05-CV-10419(DPW)** |
| | : |
| **Plaintiffs,** | : |
| **v.** | : |
| | : |
| **JEREMY JOHNSON and REPROMEDIX CORP.,** | : |
| | : |
| **Defendants.** | : JUNE 29, 2006 |

## AFFIDAVIT OF JAMES RUDDOCK

I, James Ruddock, do hereby depose and say:

1.    I have been retained to provide expert testimony during trial of the above-captioned case by counsel for Plaintiffs' genX international, inc. and IVFonline.com, LLC (hereinafter referred to as "Plaintiffs").

2.    I have more than 20 years of experience in the analysis of computer systems and operator usage patterns.

3.    I have extensive experience in analyzing normal and abnormal operator usage through examining hardware and software access patterns using operating system/application functions and specialized forensic analysis tools including EnCase, Mount Image Pro and other data extraction and recovery tools.

4.    I have been retained to, among other things, identify any computer forensic evidence which indicates that Defendant Jeremy Johnson ("Johnson") removed and/or transferred confidential, proprietary and/or trade secret information from Plaintiffs' computer system(s).

**EXHIBIT**

**A**

5.    I conducted a forensic computer analysis of the desktop computer that Johnson used during his employment with Plaintiffs.

6.    In order to conduct the analysis, the physical computer was sent directly to a third-party forensic analysis company called Forensic Data Recovery.

7.    Forensic Data Recovery created a "bit-stream image" of the computer's hard drive using EnCase technology.

8.    A "bit-stream image" is an exact copy of every sector of a computer's source drive, whether or not it contains active data.

9.    In addition to the "bit-stream image," I also requested that Forensic Data Recovery provide the following diagnostic information:

    (a)    Hardware configuration information;

    (b)    Full drive/folder/file structure including modified, create, access and deletion dates;

    (c)    Listings of all deleted files and folders;

    (d)    Print log contents;

    (e)    Extracted e-mails; and

    (f)    E-mails, contacts and e-mail configurations, as well as other Microsoft Outlook information.

10.    I conducted an analysis of the EnCase "bit stream image" provided by Forensic Data Recovery.

11.    I used numerous software tools to conduct the analysis, including Mount Image Pro (version 1.05), Recover My Files (version 3.3.0.2872), Recover My Email for Outlook (version 2.0.3.9), Recover My Email for Outlook Express (version 1.0), and

Explorer View (version 2.2), as well as native Microsoft Windows XP search and analysis tools.

12.    I conducted three different types of analyses:

(a)    The recovery and examination of the unallocated clusters on the drive in order to analyze deleted and otherwise inaccessible files;

(b)    The examination of all currently accessible files on the system; and

(c)    The extraction and examination of all e-mails and address book entries, both current and deleted.

13.    In order to analyze the unallocated sectors of the hard drive, I mounted the bit stream image as a single drive using Mount Image Pro.

14.    I then used the "Recover My Files" program to identify deleted files.  I recovered over 629,000 deleted files using this method.

15.    I then searched the recovered files based on dates and content.

16.    Among other files, I examined all files with create, modify, access, print or delete dates from January 1, 2005 through January 24, 2005 (inclusive).

17.    Among other things, my analysis revealed that on January 7, 2005, two Microsoft Excel files which contained name and address information for over a hundred customers was accessed and modified.

18.    Among other things, my analysis revealed that on January 24, 2005, a Microsoft Excel file containing name, email and telephone information for thirty-three (33) customers was created and deleted from the computer.

19.     Among other things, my analysis revealed that files containing hundreds of entries of detailed invoice information including customer, product and price were recovered, all of which date to January 19, 2005 and January 20, 2005.

20.     Among other things, my analysis revealed that during the month of January, 2005, there were numerous other accesses to customer information files, such as a Coda Standing Order List and a Global Sampling list.

21.     I also analyzed all current files present on the hard drive.

22.     In order to analyze all current files present on the hard drive, I mounted the Encase image as a logical drive using Mount Image Pro.

23.     I then searched all files based on dates and content in order to identify significant data.

24.     Among other files, I examined all files with create, modify, access, print or delete dates from January 1, 2005 through January 24, 2005 (inclusive).

25.     I also examined all system logs, including print logs, recent documents and cached internet files.

26.     Among other things, my analysis revealed that on January 21, 2005, Plaintiffs' "Corporate Leads" directory was accessed.

27.     Among other things, my analysis revealed that on January 24, 2005, numerous Microsoft Excel spreadsheets were accessed related to sales performance, including "jj 4th qrt 04 vs 4th qrt 03.xls," "Sales 4th Q 03.xls" and "Sales 4th Q 04.xls."

28.     Among other things, my analysis revealed that on January 24, 2005, various files related to a magazine mass mailing, including "Magazine Mass Mailing

2.xls," which was created on January 7, 2005, modified on January 21, 2005, and accessed on January 24, 2005, were also accessed.

29.    Among other things, my analysis revealed that twenty-one shortcuts in the Recent Files listing indicate a last access date and time of January 24, 2005 at 5:04 p.m.  Among these files and file folders were:

   a.    Sales 4th Q 04.xls

   b.    Sales 4th Q o3.xls

   c.    Magazine Mass Mailing.xls

   d.    Magazine Mass Mailing2.xls

   e.    Leads

   f.    jj 4th qrt 04 v. 4th qrt 03.xls

   g.    jj 4th qrt 03.xls

   h.    Customers to Receive Magazine.xls

   i.    Customers for Subscription.xls

   j.    Copy of jj 4th qrt vs 4th qrt 03-revised.xls

   k.    4th Q 2004

It is possible that these entries indicate that these files and file folders were copied or transferred at 5:04 p.m. on January 24, 2005.

30.    My analysis revealed that a file entitled "Global Leads January 2005.xls" was accessed during the week of January 17, 2005.

31.    As part of my analysis, I also examined all interaction between Johnson's computer and Plaintiffs' internet-based ordering system by examining cached web pages.

32.    My analysis of the cached web pages revealed a substantial usage of Plaintiffs' ordering system, including views of customer, product, pricing and order information.  My analysis revealed that in total, 133 accesses were made to customer information between January 5, 2005 and January 24, 2005.

33.    A laptop computer is normally used for all purposes while out of the office and to store key information which may be needed both at the office and elsewhere.  The laptop is used for functions that require continuity over time.  This ensures that key information is available while traveling.   Information that is important to the user is stored on the laptop since it is available both at the office and while traveling.

34.    The combination of typical usage patterns and the usage of Johnson's desktop computer indicate that if Johnson desired to transfer Plaintiffs' information from his desktop computer, such information would have been transferred to his laptop computer.

35.    Based on the foregoing, there is compelling circumstantial evidence that Johnson transferred information belonging to Plaintiffs to his laptop computer and maintained that information on his laptop computer after leaving Plaintiffs' employment.

In accordance with 28 U.S.C. § 1746, I certify under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on June 28, 2006.

_____
James Ruddock

LAW OFFICES

# SIEGEL, O'CONNOR, O'DONNELL & BECK, P.C.

150 TRUMBULL STREET     www.siegeloconnor.com     (860) 727-8900
HARTFORD, CONNECTICUT 06103                          FAX (860) 527-5131

Michael J. Spagnola
mspagnola@siegeloconnor.com

June 9, 2006

**By Fax ((617) 557-5999) and First Class Mail**

Melissa M. D'Alelio, Esq.
Robinson & Cole LLP
One Boston Place
Boston, MA 02108

> Re:   *genX international, inc. & IVFonline.com, LLC*
> *v. Jeremy Johnson & Repromedix Corp.*
> *U.S.D.C. D. Mass. Case No. 05 CV 10419 DPW*

Dear Melissa:

This letter will serve to follow up on our Local Rule 37.1 conference today and discuss other discovery issues that have recently arisen.

As you know, several of Magistrate Judge Bowler's rulings on Plaintiffs' Motion to Compel were "without prejudice." Specifically, as you and I agreed following the hearing on Plaintiffs' motion, Request 27 and 29 to Repromedix and Requests 30 and 34 to Johnson were denied without prejudice.

With respect to Requests 27 and 29 to Repromedix and Request 30 to Johnson, Magistrate Judge Bowler expressed that she would re-entertain Plaintiffs' motion as to those requests if Plaintiffs could produce evidence that the list of contacts Mr. Johnson produced pursuant to Plaintiffs' proposal was false or incomplete. After reviewing the proposal letters Mr. Johnson produced in accordance with Magistrate Judge Bowler's ruling on Request 17 to Johnson, we believe that the list of contacts Mr. Johnson produced is false and/or incomplete.

Specifically, on April 12, 2006, Mr. Johnson sent a proposal letter to William J. Lloyd, Jr., M.D. in Reno, Nevada. Dr. Lloyd is not listed in Mr. Johnson's list of contacts. Similarly, on February 13, 2006, Mr. Johnson sent a proposal letter to Dale McCLure, M.D. in Seattle, Washington. Dr. McClure is not listed in Mr. Johnson's list of contacts. Likewise, on April 12, 2006, Mr. Johnson sent a proposal to David Battaglia, PhD. Dr. Battaglia is not listed in Mr. Johnson's list of contacts. Additionally, on November 2, 2005, Mr. Johnson sent a proposal to G. David Adamson, M.D. in San Jose, California. Dr. Adamson is not listed in Mr. Johnson's list of contacts.



# SIEGEL, O'CONNOR, O'DONNELL & BECK, P.C.

Melissa M. D'Alelio, Esq.
June 9, 2006
Page 2

Mr. Johnson's failing to list these contacts in his list of contacts demonstrates that the list is false and/or incomplete – precisely the evidence Magistrate Bowler stated would warrant her re-entertaining Plaintiffs' motion as to Requests 27 and 29 to Repromedix and Request 30 to Johnson.

In a similar vein, with respect to Request 34 to Johnson, Magistrate Judge Bowler intimated that she would re-entertain Plaintiffs' motion if Plaintiffs could produce evidence suggesting that Mr. Johnson has transferred their information onto his laptop computer. When asked what kind of evidence would suffice, Magistrate Judge Bowler stated that an affidavit indicating as much would do.

Plaintiffs are prepared to submit an affidavit from their computer forensic expert affirming, generally, that based on file access patterns and deleted files discerned during a forensic computer investigation conducted on the computer Mr. Johnson used while employed by Plaintiffs, there is compelling circumstantial evidence that Mr. Johnson disclosed to an external source(s) critical lead and customer information belonging to Plaintiffs during the time frame in which he interviewed with Repromedix and during the time frame in which when he left Plaintiffs' employ to join Repromedix. In conjunction with Monica Mezezi's May 8, 2006 affidavit, our expert's affidavit is enough for Magistrate Judge Bowler to re-entertain Plaintiffs' motion on Request 34 to Johnson, and grant that request.

In light of the foregoing, we would ask that you agree to produce documents responsive to Request 27 to Repromedix and produce Mr. Johnson's laptop computer for inspection.[1] In return, our client will withdraw its objections to Interrogatories 7-12 to IVFonline.com, LLC and answer those interrogatories. Additionally, Plaintiffs will not seek documents responsive to Requests 29 to Repromedix and Request 30 to Johnson, even though Magistrate Judge Bowler would likely grant Plaintiffs' motion as to those requests in light of Mr. Johnson's contact list being false and/or incomplete.

An agreement would spare the parties the effort and expense of having to prepare motions and argue those motions before Magistrate Judge Bowler. However, in the event we cannot reach an accord, Plaintiffs are prepared to renew their Motion to Compel as to Requests 27 and 29 to Repromedix and Requests 30 and 34 to Johnson.

---

[1] As I noted during oral argument, we are very amenable to working out a mutually agreeable plan for the inspection. We are fully willing to listen to any proposals you have concerning the inspection.

# SIEGEL, O'CONNOR, O'DONNELL & BECK, P.C.

Melissa M. D'Alelio, Esq.
June 9, 2006
Page 3

In light of the relatively small time frame remaining for fact discovery, I am requesting that you and I have a Local Rule 37.1 conference immediately. Please contact me with a day and time next week that works best for you.

Thank you.

Very truly yours,

Michael J. Spagnola

C: Glenn A. Duhl, Esq.

## Michael Spagnola

**From:** Michael Spagnola
**Sent:** Friday, May 12, 2006 5:40 PM
**To:** D'Alelio, Melissa M.
**Subject:** Discovery Rulings

Hi Melissa – as you probably know, the magistrate judge's electronic order did not contain the specifics regarding each discovery request argued at yesterday's hearing. Therefore, I thought I would list what I had for her rulings and see if you agreed with my list.

Interrogatory 2 to Johnson and Request 35 to Repromedix were denied.

With respect to Request 4 to Johnson, Defendants were ordered to produce Johnson's W-2s.

Request 27 to Repromedix was denied without prejudice.

Request 29 to Repromedix and Request 30 to Johnson were denied without prejudice.

Request 17 to Johnson was granted, yet Defendants may redact price quotes.

With respect to Request 31 to Johnson, Defendants are to provide a date for each contact Johnson has made on Repromedix's behalf.

Request 34 to Johnson was denied without prejudice.

Requests 18 to both Johnson and Repromedix were denied.

Also, after the argument, I realized that the judge did not rule on Request 33 to Johnson ("Any business cards collected by [Johnson] during [his] employment with genX"). Would you be willing to produce these business cards so we can avoid having to bring this back before the judge?

I hope you have a good weekend.

Thanks.


Michael J. Spagnola
Siegel, O'Connor, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford, CT 06103
(860) 727-8900, Ext. 888
(860) 527-5131 -- fax
mspagnola@siegeloconnor.com

This message has been sent from the law firm of Siegel, O'Connor, O'Donnell & Beck, P.C. and contains information which is confidential and/or privileged. If you are not the intended recepient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy. Thank you.



## Michael Spagnola

| | |
|---|---|
| **From:** | D'Alelio, Melissa M. [mdalelio@rc.com] |
| **Sent:** | Monday, May 15, 2006 6:30 AM |
| **To:** | Michael Spagnola |
| **Cc:** | Bauer, John R. |
| **Subject:** | RE: Discovery Rulings |

Hi Mike,

I hope you had a nice weekend despite the rain.  I agree with your list, except I believe Judge Bowler only asked that Mr. Johnson produce his W2s for 2005, not 2004, given he was not working for Repromedix at that time and was working in Canada for IVF.

With respect to request No. 33 to Johnson re business cards, as we note in our Opposition, Mr. Johnson has no such business cards aside from a handful from *other sales representatives* who are his friends in the industry.  In conversations I have had with Mr. Johnson since the Opposition, I have confirmed that none of these "friends" are clients or contacts.

I requested this information from Mr. Johnson Thursday and will forward it on as soon as I receive it.

Thanks,
Melissa

-----Original Message-----
**From:** Michael Spagnola [mailto:mspagnola@siegeloconnor.com]
**Sent:** Friday, May 12, 2006 5:40 PM
**To:** D'Alelio, Melissa M.
**Subject:** Discovery Rulings

Hi Melissa – as you probably know, the magistrate judge's electronic order did not contain the specifics regarding each discovery request argued at yesterday's hearing.  Therefore, I thought I would list what I had for her rulings and see if you agreed with my list.

Interrogatory 2 to Johnson and Request 35 to Repromedix were denied.

With respect to Request 4 to Johnson, Defendants were ordered to produce Johnson's W-2s.

Request 27 to Repromedix was denied without prejudice.

Request 29 to Repromedix and Request 30 to Johnson were denied without prejudice.

Request 17 to Johnson was granted, yet Defendants may redact price quotes.

With respect to Request 31 to Johnson, Defendants are to provide a date for each contact Johnson has made on Repromedix's behalf.

Request 34 to Johnson was denied without prejudice.

Requests 18 to both Johnson and Repromedix were denied.

Also, after the argument, I realized that the judge did not rule on Request 33 to Johnson ("Any business cards collected by [Johnson] during [his] employment with genX").  Would you be willing to produce these business cards so we can avoid having to bring this back before the judge?

EXHIBIT
D

ALL-STATE LEGAL®

I hope you have a good weekend.

Thanks.

Michael J. Spagnola
Siegel, O'Connor, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford, CT 06103
(860) 727-8900, Ext. 888
(860) 527-5131 -- fax
mspagnola@siegeloconnor.com

This message has been sent from the law firm of Siegel, O'Connor, O'Donnell & Beck, P.C. and contains information which is confidential and/or privileged. If you are not the intended recepient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy. Thank you.

This transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-275-8200, or e-mail at it@rc.com and immediately delete this message and all its attachments.

This email has been scanned by the MessageLabs Email Security System.

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GENX INTERNATIONAL, INC. and** : | **CIVIL ACTION NO. 05-CV-10419(DPW)** |
| **IVFONLINE.COM, LLC,** : | |
| : | |
| : | |
| **Plaintiffs,** : | |
| **v.** : | |
| : | |
| **JEREMY JOHNSON and** : | |
| **REPROMEDIX CORP.,** : | |
| : | |
| **Defendants.** : | **JUNE 2̲3̲, 2006** |

### AFFIDAVIT OF MONICA MEZEZI

I, Monica Mezezi, do hereby depose and say:

1.      I am the President of Plaintiff IVFonline.com, LLC ("IVFonline").

2.      As IVFonline's President, I am familiar with IVFonline's computer infrastructure.

3.      As IVFonline's President, I am familiar with the manner in which IVFonline maintains its customer and prospective customer information.

4.      As IVFonline's President, I am able to identify documents containing IVFonline's confidential, proprietary and trade secret information.

5.      The Microsoft Excel files referred to in Paragraph 17 of James Ruddock's affidavit attached to Plaintiffs' Second Motion to Compel ("Mr. Ruddock's Affidavit") are comprehensive compilations of customer and prospective customer information belonging to Plaintiffs.



EXHIBIT
**E**

6.    The Microsoft Excel file referred to in Mr. Ruddock's Affidavit at Paragraph 18 is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs.

7.    The Coda Standing Order List referred to in Mr. Ruddock's Affidavit at Paragraph 20 is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs.

8.    The Global Sampling list referred to in Mr. Ruddock's Affidavit at Paragraph 20 is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs.

9.    The Microsoft Excel spreadsheets entitled "jj 4th qrt 04 vs 4th qrt 03.xls," "Sales 4th Q 03.xls" and "Sales 4th Q 04.xls" referred to in Mr. Ruddock's Affidavit at Paragraph 27 contain sales, pricing, product and customer information belonging to Plaintiffs.

10.    The Microsoft Excel document entitled "Magazine Mass Mailing 2.xls" referred to in Mr. Ruddock's Affidavit at Paragraph 28 is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs.

11.    The Microsoft Excel file entitled "Global Leads January 2005.xls" referred to in Mr. Ruddock's Affidavit at Paragraph 30 is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs.

12.    The files referred to in Mr. Ruddock's Affidavit at Paragraph 19 contain hundreds of entries of detailed invoice information, including customer, product and price, all belonging to Plaintiffs.

2

13. Plaintiffs' "Corporate Leads" directory referred to in Mr. Ruddock's Affidavit at Paragraph 26 is a comprehensive compilation of customer and prospective customer information belonging to Plaintiffs.

14. Plaintiffs' internet-based ordering system referred to in Mr. Ruddock's Affidavit at Paragraph 32 is a comprehensive compilation of customer and prospective customer information, views of Plaintiffs' customers and prospective customers, and product, pricing and order information, all belonging to Plaintiffs.

15. Plaintiffs have expended tremendous amounts of effort and incurred significant expense in compiling all of the information described above.

16. The information is not known outside of Plaintiffs' business.

17. Only Plaintiffs' key employees involved in marketing and developing their business have access to the information.

18. To guard the secrecy of the information, Plaintiffs:

(a) require all employees to execute a confidentiality non-compete agreement as well as an acknowledgement that they have read and understood an employee manual which includes provisions relating to confidentiality of information;

(b) Plaintiffs' computers are password protected;

(c) a particular employee's customer contacts are password protected in such a way so as to only allow that employee and key management personnel access to those customer contacts;

(d) Plaintiffs hire an outside company to ensure the safety and integrity of information contained on their computers; and

3

(e)     Plaintiffs maintain a security system to guard their premises.

19.     The information cannot be duplicated without substantial effort and expense and/or misappropriation.

20.     Jeremy Johnson's last day of work with Plaintiffs was January 24, 2005.

In accordance with 28 U.S.C. § 1746, I certify under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2006.

Monica Mezezi

4

December 15, 2004

Jeremy Johnson
345 Colborne Street
Elora, Ontario, Canada

Dear Jeremy,

I am pleased to make the following offer to you for full-time employment here at Repromedix Laboratories beginning January 5, 2005. The position we are offering is Territory Manager of the Northwest Territory. This territory consists of all sales from Northern California, Oregon, North Nevada and Washington.

Responsibilities include attaining revenue projections and the implementation of marketing strategies within the Central Territory. Travel of up to 50% can be expected..

The position reports directly to the Western Regional Sales Director, Doug Cunningham.

Your compensation package for the position will be as follows:

Base Salary:  $60,000 per year.

Commission:  4% of collected sales revenue, as outlined in the attached Repromedix
    Commission/Draw & Bonus Plan 2004. (under revision) not sent

**Because this is a new area for us in obtaining revenues there will be a commission program re-established by sales management for 2005. The commissions will be paid from Gross Revenues attained. Bonus opportunity is $500.00 for reaching budget and $1,000 if Bonus level sales are attained. Maximum monthly Bonus available is $1,500.00**

Automobile Allowance:  $325 per month. Insurance, taxes, gas and all routine maintenance will also be reimbursed in full.

Expenses: All Company related travel & business expenses as approved in the budget allowance, will be reimbursed

Benefits:  Under separate cover and mailed or FAX'd to you



RPX025

This compensation plan is personal and confidential. It is subject to annual review. Mergers and acquisitions could result in unanticipated and dramatic changes in the overall value of this compensation package. Every attempt will be made to keep this package progressive and equitable to both the employee and the company.

Sincerely Yours,

Douglas Cunningham
Western Region Sales Director
Repromedix

CC; Craig Sockol, CEO

I accept the compensation package as detailed above.

_____        DEC. 20/2004
Jeremy Johnson        Date

NOTE: This offer is contingent upon the successful completion of background & reference checks.

RPX026